𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

NORFOLK SOUTHERN RAILROAD COMPANY V. FENTRESS.

March 18, 1920.

1. FIRES—*Damages—Evidence—Cost Price.*—It has been held in fire damage cases that the plaintiff may prove the cost of the property destroyed as tending, at least, to show its market value.

2. FIRES—*Damages—Evidence—Cost Price.*—The reason that evidence of the cost of property is admissible in fire damage cases is that, while the amount which the property cost when purchased is not the absolute and possibly not an approximate criterion of its value at the time of the fire, it is nevertheless one element or circumstance relating to such value which can properly go to the jury to be considered along with other evidence in determining value.

3. FIRES—*Damages—Evidence—Cost Price.*—Of course, where evidence has been admitted as to the cost of property destroyed, evidence will also be admissible to show that it cost more than it is worth, or that since its purchase it had deteriorated in value; but notwithstanding this, the cost price, if not too remote in point of time, is a circumstance which may be proved to the jury, not as establishing value sufficiently to authorize a recovery, but as a pertinent fact relating thereto.

4. WITNESSES—*Cross-Examination—Scope of Cross-Examination.*—The cross-examiner has very great liberty, which the courts should be careful not to restrict improperly, for the right of cross-examination is invaluable in the search for truth. This liberty, however, is not entirely unrestricted, and in any given case its scope must be left chiefly to the discretion of the trial court.

5. WITNESSES—*Scope of Cross-Examination—Discretion of Court.*—It is a notorious fact that in many cases much time is unnecessarily consumed by aimless, useless, and prolonged cross-examinations, so that unless the discretion of the trial courts to limit counsel is firmly maintained, the evil which is already serious will be magnified. There is a vast amount of evidence which, in a certain legal sense, is relevant, but at the same time is so unimportant when compared with better evidence which is

easily available as to be properly excluded. The admission or rejection of such evidence is not controlled by any inflexible rule, but by a sound, though undefined, judicial discretion, depending upon the circumstances of the particular case, and subject to review.

6. Witnesses—*Cross-Examination—Discretion of Court—Case at Bar.*—In an action for damages from fire, plaintiff testified in detail as to the amount of his damages. Upon cross-examination he was asked how much did he pay the other heirs for their three-fourths interest in the property subject to his mother's dower. His motive in purchasing from the other heirs was to provide his mother with a home.

*Held:* That even if there was a doubt as to whether the trial judge properly exercised his discretion in sustaining an objection to this question, the error was harmless.

7. Witnesses—*Fires—Striking Out Testimony as to Identity of Engine.*—On trial of an action for damages from fire, the trial court refused to strike out the testimony of a witness who after testifying that he knew that the electric locomotive, which was alleged to have set out the fire, had on another occasion set fire to a trestle, testified that he guessed that the engine had been across fifteen or twenty minutes when he saw it, and that he did not see the engine when it went across. The ground of this exception was that the witness was guessing as to the identity of the engine.

*Held:* That this was not a fair interpretation of the witness' testimony, as his guess clearly referred to the time which had elapsed since the engine had crossed.

8. Judicial Notice—*Matters of Common Knowledge—Electric Locomotives Safest for Preventing Fires.*—In a fire damage case the court sustained the objection of the attorney for the plaintiff when the attorney for the company stated to the jury that, "It is a matter of common knowledge that electric locomotives are best and safest for preventing fires." However well known this may be to some, it is not apparent that the common knowledge of the public has progressed as far as this, and if certainly true it can be certainly proved. Under the circumstances, the remark of counsel was objectionable, in the absence of testimony making the comparison which the attorney undertook to make in his argument to the jury. Its exclusion certainly did not constitute reversible error.

9. Appeal and Error—*Conflicting Evidence.*—Where there is a conflict in the evidence and the jury might have found a verdict in favor of the defendant, if the verdict and judgment for plaintiff are not plainly wrong or without supporting evidence, they will not be disturbed.

10. APPEAL AND ERROR—*Amendment of Judgment by Appellate Court.*—An action for fire damage was brought in the names of one F. and K., trustee. The trustee, K., having died, his executrix was made a party to the proceeding on appeal. It not appearing that K.'s executrix had any interest whatever in the litigation, the judgment of the trial court was amended and entered on appeal in favor of F. alone.

Error to a judgment of the Circuit Court of Princess Anne county, in an action of trespass on the case. Judgment for plaintiffs. Defendant assigns error.

*Amended and affirmed.*

The opinion states the case.

*J. G. Martin,* for the plaintiff in error.

*J. E. Cole,* for the defendants in error.

PRENTIS, J., delivered the opinion of the court.

The Norfolk Southern Railroad Company complains of a judgment for damages caused by a fire which damaged the woodland of C. R. Fentress, hereinafter called the plaintiff. There are four assignments of error.

1. The plaintiff, having testified in detail as to the amount of his damages on account of the destruction of pine straw (which is used by farmers in that vicinity for making compost), of fish-pound poles (for which there is a local market) and of pine timber, as well as young pine, having a prospective value for timber; and that already having a one-fourth interest in the land, he about three or four years before had by purchase acquired the other undivided interests therein, his motive being to provide a home for his mother, who also had dower in the tract, and that his mother's dower had lapsed because of her death since that

time, was on cross-examination asked: "How much did you pay the other heirs when she died?" To which the plaintiff's counsel objected, and the company's counsel stated: "I expect to prove that he bought it for a very much less figure than they are claiming." The court sustained the objection and exception was taken to this ruling.

[1-3]    It has been held in fire damage cases that the plaintiff may prove the cost of the property destroyed as tending, at least, to show its market value. *Swanson* v. *K. & W. Ry. Co.*, 116 Ia. 308, 89 N. W. 1088; *Southern Ry. Co.* v. *Williams*, 113 Ga. 336, 38 S. E. 744; *Amoskeag Mfg. Co.* v. *Hoad*, 59 N. R. 332; 1 Jones (Horowitz) on Evidence, sec. 168. The reasons therefor are said to be that while the amount which the property cost when purchased is not the absolute and possibly not an approximate criterion of its value at the time of the fire, it is nevertheless one element or circumstance relating to such value which can properly go to the jury to be considered along with other evidence in determining value. Of course, evidence would also be admissible to show that it cost more than it was worth, or that since its purchase it had deteriorated in value; but notwithstanding this, its cost, of not too remote in point of time, is a circumstance which may be proved to the jury, not as establishing value sufficiently to authorize a recovery, but as a pertinent fact relating thereto.

In *Warren Co.* v. *Hanson*, 17 Ariz. 252, 150 Pac. 240, it is said that, "Such evidence is admissible as a circumstance which may properly be considered by the jury in connection with other circumstances tending to prove the value of the property at the time it was destroyed."

The cost of the property may or may not be evidence of its value, and is never more than a circumstance tending to throw light upon the question. The lapse of time from the date of the purchase to the date of the inquiry should be considered, for the longer the period the less the signif-

icance of the price paid for the property. Then such price is the subject of contract, while value is fixed without reference to the particular contract which depends upon the wishes, convenience or necessity of the contracting parties. Hence, the price paid may have little weight upon the question of determining the value of the property at a given time. It may nevertheless be a circumstance to be considered, if not too remote, and as such is generally admissible under proper limitations.

[4] The witness was under cross-examination, and the cross-examiner has very great liberty, which the courts should be careful not to restrict improperly, for the right of cross-examination is invaluable in the search for truth. The liberty, however, is not entirely unrestricted, and in any given case its scope must be left chiefly to the discretion of the trial court.

In discussing a kindred question, Alderson, B., in *Attorney-General* v. *Hitchcock,* 1 Exch. 104, says: "When the question is not relevant, strictly speaking, to the issue, but tending to contradict the witness, his answer must be taken (although it tends to show that he in that particular instance speaks falsely, and although it is not altogether immaterial to the issue) for the sake of the general public convenience; for great inconvenience would follow from a continual course of those sorts of cross-examinations which would be let in in the case of a witness being called for the purpose of contradiction." And in the same case Rolfe, B., expresses himself thus: "The laws of evidence on this subject, as to what ought and what ought not to be received, must be considered as founded on a sort of comparative consideration of the time to be occupied in examinations of this nature and the time which it is practicable to bestow upon them. If we lived for a thousand years, instead of about sixty or seventy, and every case were of sufficient importance, it might be possible and perhaps proper to throw

a light on matters in which every possible question might be suggested, for the purpose of seeing by such means whether the whole was unfounded, or what portion of it was not, and to raise every possible inquiry as to the truth of the statements made. But I do not see how that could be; in fact, mankind it to be impossible. Therefore some line must be drawn. * * "

By way of contrast to English judicial style, this from Mr. Justice Holmes saves his time and expresses the same idea, together with the reason therefor, with his customary sententious emphasis: "So far as the introduction of collateral issues goes, that objection is a purely practical one— a concession to the shortness of life." *Reeve* v. *Dennett*, 145 Mass. 28, 11 N. E. 938.

[5] While the particular cross-examination under consideration is not worthy of any criticism whatever, it is a notorious fact that in many cases much time is unnecessarily consumed by aimless, useless and prolonged cross-examinations, so that unless the discretion of the trial courts to limit counsel is firmly maintained, the evil which is already serious will be magnified. There is a vast amount of evidence which, in a certain legal sense, is relevant, but at the same time is so unimportant when compared with better evidence which is easily available as to be properly excluded. The admission or rejection of such evidence is not controlled by any inflexible rule, but by a sound though undefined judicial discretion, depending upon the circumstances of the particular case, and subject to review. *Rosenstein* v. *Fair Haven, etc., R. Co.*, 78 Conn. 34, 60 Atl. 1061. In the case in judgment, as it appeared that the plaintiff inherited one-fourth of the land upon which the fire occurred, and that in a family settlement with the other heirs at law, in order to provide a home for his mother, with which commendable purpose the other owners doubtless sympathized, the precise price paid by him for their

interests, subject to his mother's dower, three or four years before the fire occurred, could have little probative value. Whether great or small, its effect in discrediting the testimony of the plaintiff as to the specific items of his damage would necessarily have been insignificant. If the inquiry had been pursued to its logical end, it would have led to the introduction of many immaterial and collateral facts as to the circumstances of the purchase, which would not have aided the jury but would have tended to divert their attention from the issue to be determined.

Cross-examination, which is said to be an art, certainly as practiced in many instances, becomes a burden to the courts and juries as a great waster of valuable time. It is also frequently so aimless as to be inexcusable, while it sometimes reacts against the litigant whose attorney persists in indulging therein too freely as a pastime. There should be some better reason therefor than that it is his privilege, and that nobody can stop him until it is too late.

[6]  We conclude, as to this assignment, that even if there be doubt as to whether the trial judge properly exercised his discretion in excluding this testimony, the error is harmless.

[7]  2. The second assignment of error grows out of the refusal of the trial court to strike out the testimony of the witness Robbins, upon the ground that after having testified that he knew that the electric locomotive, which is alleged to have set out this fire, had on another occasion set fire to a trestle during a dry spell, answered two questions thus: "How long had the engine been across? A. "I guess fifteen or twenty minutes, possibly." Q. "Did you see the engine when it went across?" A. "No, sir." The ground of this exception is, that the witness was guessing as to the identity of the engine. It is clear that this is not the fair interpretation of his testimony. His guess, or estimate, clearly referred to the time which had elapsed since

the engine had crossed, and the fair inference from his testimony, taken as a whole, is that he heard the train, and that although he did not actually see the engine when it went across the trestle which caught fire, he identified it and had no doubt whatever of the facts to which he had testified positively. The court correctly overruled the motion.

[8]    3. The court sustained the objection of the attorney for the plaintiff when the attorney for the company stated to the jury that, "It is a matter of common knowledge that electric locomotives are best and safest for preventing fires." However well-known this may be to some, it is not apparent that the common knowledge of the public has progressed as far as this, and if certainly true it can be certainly proved. There was no evidence introduced making any comparison between steam or any other locomotives with electric motors, as to danger of setting out fires. The evidence was entirely confined to the locomotive which it was alleged had set out this fire. One witness had testified that it had set out one fire which he had himself extinguished. Even the defendant's witnesses had stated that if the rails were surrounded with shavings, there was danger of fire. There was testimony that the track and right of way had combustible matter on them, chiefly dried grass and rubbish; that under certain conditions the coils under the electric motor might become red hot, and that sometimes, because of friction with the wheels of the engine, the iron rails would be blistered and the sparks would fly. Under these circumstances, the remark of counsel was objectionable in the absence of testimony making the comparison which the attorney undertook to make in his argument to the jury. Its exclusion certainly does not constitute reversible error.

[9]    4. The fourth assignment of error is that the verdict is contrary to the law and the evidence. As to this

it is sufficient to say that while there was a conflict and the jury might have found a verdict in favor of the company, the verdict and judgment are not plainly wrong or without supporting evidence, and hence the assignment is without merit.

[10]   The motion was brought in the names of C. H. Fentress and J. M. Keeling, trustee.   The trustee, Keeling, having died, his executrix has been made a party to the proceeding here.   It does not appear that Mr. Keeling's executrix has any interest whatever in the litigation, and hence the judgment of the trial court will be amended and entered here in favor of C. H. Fentress alone.

*Amended and affirmed.*