William BOONE, Jr., Petitioner,

v.

Superintendent E. STACY, Respondent.

Civ. A. No. 84–231–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 18, 1984.

William Boone, Jr., pro se.

Robert Q. Harris, Asst. Atty. Gen., Commonwealth of Virginia, Richmond, Va., for respondent.

## ORDER

DOUMAR, District Judge.

The petitioner, a Virginia inmate proceeding *pro se*, brings this writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted of grand larceny (Va.Code § 18.2–95 (1982)) and possession of burglarious tools (Va.Code § 18.2–94 and 10 (1982) by the Norfolk Circuit Court in a bench trial. On March 18, 1983, the court imposed a three-year sentence on each conviction, with the burglary tool sentence suspended for six years conditioned upon good behavior. The petitioner raised the claim presented herein previously in a direct petition for appeal heard by the Supreme Court of Virginia. That court refused the petition for appeal on October 18, 1983, finding no reversible error. Therefore, the petitioner has exhausted his available state remedies as required by 28 U.S.C. § 2254(c).

## THE ERROR ALLEGED

The conviction is based on insufficient evidence because the value of the stolen goods, an essential element of grand larceny, was not established.

## I. BACKGROUND

Petitioner was convicted of grand larceny for the theft of five dresses from a Smith & Welton department store located in a Norfolk shopping mall. Mrs. Pawl, a security guard at a different store in the mall, testified at the trial that she first observed the petitioner and others in the Smith & Welton's store beside a dress rack. She was passing the store while on her lunch hour at the time. She recognized one of the co-defendants from a previous shoplifting arrest and recognized the petitioner from prior occasions. (Tr. p. 9). The security guard qualified as an expert on security matters and said that from 30 feet she observed the petitioner and others placing dresses in a "booster box" placed between the petitioner's legs. (Tr. p. 9). A "booster box" is a special box used by professional shoplifters to conceal merchandise from detection. (Tr. p. 17). Soon thereafter the petitioner and others were apprehended in a car driven by the petitioner. The dresses and the booster box were found in the car under the driver's seat, with the store price tags still attached to the dresses. (Tr. p. 28).

■ The sole issue raised here is whether the prosecution proved the value of the dresses was "$200 or more" to support the grand larceny conviction under Va.Code § 18.2–95 which reads in part:

§ 18.2–95. Grand larceny defined; how punished.—Any person who:

(1) Commits larceny from the person of another of money or other thing of value of five dollars or more, or

(2) *Commits simple larceny not from the person of another of goods and chattels of the value of $200 or more,* shall be deemed guilty of grand larceny which shall be punishable by confinement in the penitentiary for not less than one nor more than twenty years or in the discretion of the jury, or judge sitting without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $1,000, either or both.

(Emphasis added). The burden is upon the Commonwealth to prove beyond a reasonable doubt that the value of the goods stolen equals or exceeds the statutory amount fixing the grade of the offense. *Knight v. Commonwealth,* 225 Va. 85, 300 S.E.2d 600 (1983); *Wright v. Commonwealth,* 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954).

■ With respect to a habeas corpus petition, the current standard for assessing sufficiency of the evidence to withstand due process scrutiny is set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) *rehearing denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). In *Jackson,* the United States Supreme Court established the rule that to withstand constitutional scrutiny, a state court conviction must be based on evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. The Court stated that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. (Emphasis in original.) An applicant is entitled to relief on the ground of insufficient evidence to convict only if it is found that "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. at 2791–92.

The petitioner asserts that the tagged selling price of the dresses is not the test of market value nor can it be the basis for testimony, but rather that fair market value must be established in some other fashion.

## II. THE TRIAL

At trial, the Commonwealth called Mr. John Maroulis, assistant manager of this

branch of Smith & Welton, a retail department store, to establish among other things the "value" of the five stolen dresses, which still had attached the Smith & Welton price tags. Mr. Maroulis testified that the cumulative tagged selling price of the five dresses was $424.00 and the cost of the dresses was $211.00 (Trial at Norfolk Circuit Court, p. 78). However, the petitioner's attorney objected to the statement as to "cost" as hearsay since Mr. Maroulis had no experience as a buyer of clothing, or direct knowledge of the cost of the dresses (Tr. pp. 78 and 81), and this colloquy ensued:

MR. ROBINSON [petitioner's attorney]: Fair market value, depending on the kind of retail outlet that we are dealing with. And this witness wouldn't be in a position to tell us about that either because he is not a buyer.

THE COURT: Again, he is not a buyer. But it seems to me his testimony should come in. Of course, you can examine in reference to the weight, the value. Just like the cases tell us the person—the owner of a house where items are taken, they can testify. Yet they are not experts. But they can testify. Of course, it's hearsay to them.

Now, in that sense you don't have people you can examine. *He, being assistant manager, and he relates the price tags. I will let him say where they come from. . . .*

(Tr. p. 82) (emphasis added). However, on cross-examination by the petitioner's attorney as to "cost" and how Smith & Welton arrived at its retail prices, Mr. Maroulis stated:

They usually go by the cost of the dress, what they paid for the dress, and normally there is a hundred percent markup on the dress. Sometimes there may be a couple of dollars more, but that's the normal process.

(Tr. p. 87). The petitioner's attorney continued to maintain that fair market value had not been established for the dresses because the testimony was hearsay and the following dialogue took place on this issue:

MR. ROBINSON [petitioner's attorney]: All right, Judge. I again move to strike the witness's testimony about value. We don't have any evidence of value at this point.

THE COURT: Now, like I said, I said is not retail. It seems to me most cases say, when I say retail, the fair market value. Now, I don't know that we have a case in Virginia. I would have to take a quick look at that to be sure that says that. Of course he did say two hundred eleven dollars.

MR. ROBINSON: That's wholesale.

THE COURT: Wholesale. And that they sell for four twenty-two.

MR. ROBINSON: A hundred percent markup.

THE COURT: Yes. Of course, under either viewpoint is it not two hundred dollars, in excess—

MR. ROBINSON: Judge, what I'm saying is that if you rule that they can use wholesale value as the value determinant in the case, then I would believe our objection concerning that testimony being based upon hearsay would have to be sustained. If we are going to use the test of whether it's fair market value, then we know we have—I would concede that we have dresses of some value, but what amount of value it is impossible to say.

MR. McKENNEY [Attorney for Commonwealth]: Your Honor, if I might point out, there has been nothing to contradict the witness's testimony that the value of these dresses is four hundred and some dollars as shown by the price tags on them. . . .

 * * * * * *

MR. ROBINSON: I don't think market value has anything to do with retail value. Everybody knows retailers are out to make a profit.

MR. MCKENNEY: The term fair market value means the price at which a willing seller would sell to a willing buyer.

THE COURT: Well, we have that definition, yes, then on the open market with

eminent domain, condemnation, and that phrase carries over I suppose into the other fields. I follow what each of you have said, and I have read cases where it says fair market value. I cannot say I read a Virginia case where we have held here in this state.... But I feel under either theory, Mr. Robinson, I have got to overrule your motion.

Tr. pp. 88–91. Thus, the petitioner's attorney maintained that the retail price tags were insufficient evidence of value and that Mr. Maroulis was unqualified to testify as to routine mark-up procedures or value based on his store's price tags.

### III. THE PROPER TEST FOR VALUE

■ Market value, fairly determined, may be measured in various ways, depending on the circumstances of each case, and no general formula should be used for the purpose, but the court should retain the concept of market value as a practical standard. *U.S. v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943) (eminent domain context). The amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, is a general litmus test for fair market value in many analogous legal situations. However, the Court addresses itself here solely to the "value" required to prove grand larceny under Va.Code § 18.2–95.

■ In civil matters, the value of property may be established in a number of ways, depending upon the nature of the case: the original cost of an item *See Norfolk So. Ry. v. Fentress,* 127 Va. 87, 102 S.E. 588 (1920); or an estimate of value or current selling price made by the owner or a third person, (*Norfolk & W. Ry. v. Briggs,* 103 Va. 105, 48 S.E. 521 (1904); *Barnes v. Morrison,* 97 Va. 372, 34 S.E. 93 (1899)). In criminal matters, the Virginia Supreme Court has indicated that value can be proved by circumstantial evidence. *Veney v. Commonwealth,* 212 Va. 805, 188 S.E.2d 80 (1972). The original purchase price of a used item recently purchased may be admitted as evidence of its current value with due allowance for proper depre-

ciation. *Gertler v. Bowling,* 202 Va. 213, 215, 116 S.E.2d 268, 270 (1960). However, on a used item 10 years old, in addition to the cost of the item, there must be some evidence of the effect of "age and wear and tear" in order to establish value. *Dunn v. Commonwealth of Virginia,* 222 Va. 704, 705, 284 S.E.2d 792 (1981).

■ The general rule in a shoplifting case is that uncontradicted evidence that merchandise was displayed in a retail establishment for regular sale at a marked price representing its retail price can serve as sufficient circumstantial evidence of fair market value. *Calbert v. State of Nevada,* 670 P.2d 576 (Per Curiam) (Nev.1983); *City of Albuquerque v. Martinez,* 93 N.M. 704, 604 P.2d 842 (App.1979); *Norris v. State,* 475 S.W.2d 553 (Tenn.Cr.App.1971); *Maisel v. People,* 166 Colo. 161, 442 P.2d 399 (1968); *Lauder v. State,* 233 Md. 142, 195 A.2d 610 (1963); *People v. Irrizari,* 5 N.Y.2d 142, 182 N.Y.S.2d 361, 156 N.E.2d 69 (1959). Indeed, in the widely cited *Irrizari* case, *supra,* the New York Court of Appeals stated:

"In short, market value, ... denotes not the value of the goods in the market in which the owner had purchased them or in which he could replace them, *but the value in the market in which the goods were being traded, namely, the price at which they would probably have been sold in the regular course of business* at the time when and place where they were stolen. And so, we note, the courts have held in a number of other jurisdictions where the market value is likewise the criterion for determining the value of stolen property." [Emphasis added].

182 N.Y.S.2d at 364, 156 N.E.2d at 71. Attaching any other "value" to stolen retail goods "ignores the realities of the marketplace, particularly the fact that a thief may often be compelled to sell stolen property at far below its market value." *Mercado v. Sheriff, Clark County,* 94 Nev. 771, 587 P.2d 1327 (1978) (receiving stolen goods). Courts have stated that the tagged retail price serves as "competent evidence," (*Cal-*

118

*bert, supra* ), or, alternatively, that, though hearsay, the price tag is "a document prepared or entry made in the regular course of business...." and this hearsay exception would apply "in criminal as well as civil cases." (*Lauder, supra* ). Therefore, the retail price tags, with the testimony of the assistant manager, were sufficient to prove that the dresses had a value in excess of $200.00.

Upon a careful review of each of the petitioner's handwritten notes, and the complete transcript, the Court concludes that the petitioner's suit for a grant of habeas corpus is ORDERED DENIED and DISMISSED. The respondent's motion to dismiss is GRANTED.

Should petitioner desire to appeal the judgment of this Court, *written* notice of appeal must be filed with the Clerk of this Court, Room 307, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia 23510, which said *written* notice of appeal must be received by the Clerk within thirty (30) days from the date of this order.

IT IS SO ORDERED.