# Staunton

MRS. J. W. H. POWELL V. J. J. TILSON, ET ALS.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*John P. Buchanan,* for the appellant.

*R. G. Goolsby,* for the appellees.

EPES, J., delivered the opinion of the court.

This is a suit in chancery brought in April, 1932, by Mrs. J. W. H. Powell against the heirs at law of Lavina Tilson,

deceased, and J. J. Tilson, her surviving husband, both in his own right and as her administrator. The cause is here on the bill, a demurrer thereto, and the decree of the court sustaining the demurrer and dismissing the bill.

The suit was brought primarily for two purposes: (1) It is sought to enforce an oral contract which Lavina Tilson is alleged to have made obligating her to devise and bequeath to Mrs. J. W. H. Powell all her estate, real and personal. (2) The court is asked to construe a written postnuptial[1] contract, dated May 1, 1914, which was entered into between Lavina Tilson and her husband, J. J. Tilson, and to adjudicate that by it J. J. Tilson made a valid relinquishment both of his contingent right of curtesy in her real estate and of any distributive share in her personal property to which, if he survived her, he might be entitled by virtue of his marriage to her.

The bill, however, also alleges that Lavina Tilson died intestate and that the complainant is one of her heirs at law, and prays for a partition of the real estate of Lavina Tilson, if it be adjudged that she is not entitled to have the alleged oral contract enforced.

As stated above, the bill alleges that Lavina Tilson died wholly intestate, without ever having had issue born to her, leaving her husband, J. J. Tilson, surviving her. Including the argumentative statements which we quote to set forth the legal contentions of the appellant, the other material allegations of the bill are as follows:

"Your complainant * * was born Nettie K. Shupe, and was the niece of Lavina Shupe, afterwards Lavina Tilson.

"When your complainant was born she was a member of a large family and her aunt, Lavina Shupe, was a maiden lady living by herself on her property; * * your complainant had other brothers and sisters; * * the said Lavina Shupe became very much attached to complainant to the same extent as if complainant were her own child and repeatedly requested and urged complain-

---

[1] The bill does not expressly allege that the marriage of these parties took place prior to May 1, 1914; but the plain inference is that this is the fact.

ant's parents, Josiah and Nancy Shupe, to relinquish all rights in complainant as their child and turn complainant over to the said Lavina Shupe to be by her raised, maintained, supported and educated as her own child.

"Complainant was at that time an infant of tender years, but her recollection of the circumstances under which her aunt, Lavina Shupe, desired to take complainant as her own child are clear, * *. For a long time the parents of complainant refused and were unwilling to turn complainant over to her aunt, but finally, having little means of their own and a large family to raise, they agreed with the said Lavina Shupe that complainant would be turned over to her, and all rights which they had in the said complainant at that time were relinquished and released to the said Lavina Shupe.

"Complainant alleges, however, that her parents refused to deliver the custody and control of complainant to her aunt until her said aunt, Lavina Shupe, faithfully and unqualifiedly promised and agreed (with) the parents of complainant and complainant herself that if they would relinquish their parental rights in complainant, and if complainant would go with her, remain with her as her own child in her own home, that she, the said Lavina Shupe, would at her death either devise and bequeath or deliver to complainant all of her property, real and personal.

"Complainant alleges, therefore, that the said Lavina Shupe made a binding contract whereby she agreed in consideration of the parents of complainant relinquishing all rights in complainant and turning complainant over to Lavina Shupe in her infancy to be by her maintained and supported as her own child, she, the said Lavina Shupe, would, at her death, give, devise and bequeath to complainant all of her property, both real and personal.

"Complainant says that in pursuance of said contract * * she was delivered by her parents to the said Lavina Shupe and from that time henceforth remained with the said Lavina Shupe during her years of childhood and

youth and until she was married in exactly the same condition as if she had been the child of the said Lavina Shupe; * *.

"During her childhood and youth complainant remained with said Lavina Shupe at her home on her farm and from the time she was able aided and assisted the said Lavina Shupe in her household work and farm duties and performed for her every service that a child would be called upon to perform for a parent.

"The said Lavina Shupe * * remained unmarried until late in life; * * then she was married to J. J. Tilson, a widower, who was about _____ years old; and * * during all the time that your complainant was growing from childhood to the time she was married she remained with the said Lavina Shupe as her own child.

"Complainant's parents exercised no control over complainant during this time, nor did she live with them, but on the contrary lived with Lavina Shupe the entire time.

"When complainant decided that she wished to be married, the man to whom she was engaged sought the consent of Lavina Shupe, which was readily given, and in no way consulted her own parents.

"Complainant alleges that it was generally known among all members of her family and all her neighbors and friends that she had to all intents and purposes become the child of the said Lavina Shupe, and further alleges that on numerous occasions and up until the time of her death the said Lavina Shupe repeatedly told complainant and assured her that she had made a binding agreement to leave her all of her property, and these statements were not only made to complainant, but to a large number of people with whom the said Lavina Shupe came in contact; that there never was any question in the mind of anyone but that the said Lavina Shupe intended to carry out her contract and agreement.

"Your complainant alleges that she on her part and her parents carried out in full the verbal contract which had been made and in every way performed every part thereof

that she was to perform, and she further alleges that it was the duty of the said Lavina Shupe to bequeath or devise her property to complainant, and that complainant having on her part performed, this court will require performance on the part of the estate of the said Lavina Shupe and the said J. J. Tilson that each would relinquish property and require the same to be turned over to her.

"Complainant alleges that when the said Lavina Shupe married J. J. Tilson it was agreed between the said Lavina Shupe and the said J. J. Tilson that each would relinquish all marital rights in the property of the other; that the said Lavina Tilson agreed that she would not make any claim in right of dower against the property of J. J. Tilson if she should survive him, and that he agreed that he would not, in case he survived her, make any claim against the property.

"Complainant alleges that a contract to this effect was entered into between the said Lavina Shupe Tilson and her husband, J. J. Tilson, which was dated the first day of May, 1914, and was recorded in the clerk's office of the Circuit Court of Smyth county, Virginia, in deed book 37, page 143.

"Complainant further alleges that at the time of the execution of the said instrument under the law in Virginia as it then existed, a husband had no right of curtesy in his deceased wife's estate unless there were children born of the marriage; that it was well known that the said Lavina Shupe Tilson would have no children, and that, therefore, the said J. J. Tilson, her husband, would not have any interest in her property; when, therefore, this contract was drawn it read as follows in part:

" 'In consideration of the facts hereinafter stated and the sum of $100.00 (the said Lavina Tilson) conveys, releases and relinquishes unto the party of the second part (J. J. Tilson) all her right and claim to dower in the estate of J. J. Tilson, should she survive him, and agrees in such event to make no claim of any kind whatsoever against such estate whether real or personal. Aside from the con-

sideration above named the said party of the first part (Lavina Tilson) makes this relinquishment because of the fact that her said husband would not have any interest in her estate should she survive him, they not having any children. * *"

"As has been said, at that time the law of Virginia did not create an estate by curtesy in a wife's property unless there were children born to the marriage, and this fact was known to the contracting parties and to the scrivener who drew the contract. It can be plainly seen from the language used that this fact—that J. J. Tilson would have no right in her property at her death—was part consideration for her release of dower in his property.

"Complainant alleges that subsequently an act was passed by the General Assembly of Virginia which changed the act in regard to curtesy, and at the time of the death of the said Lavina Tilson a husband was entitled to a statutory interest in his wife's real estate and personal property whether children were born to the marriage or not; in other words, the law was changed between the time the contract was executed and the death of the said Lavina Tilson.

"Your complainant alleges that the said J. J. Tilson regardless of said contract now claims his estate by curtesy in the land of Lavina Tilson and his distributive share of her personal estate, and complainant alleges that the said J. J. Tilson is not entitled to such distributive share or to any interest in the estate of Lavina Tilson.

"Contracts are to be read in the light of their legal construction at the time they are written, and the parties are bound thereby, although subsequently the law may be changed, and it is alleged that if the fact that under the law as it existed in 1914 the said J. J. Tilson would have no right in the estate of Lavina Tilson, and such fact was known to and accepted by both parties and the legal situation arising therefrom adopted as part of the consideration for the contract, then the said J. J. Tilson is bound

thereby even though the law may subsequently have been changed.

"Complainant further alleges that if the status of property resulting from the state of existing law is made a part of the consideration for a contract and the law is subsequently changed, it cannot operate to affect the legal status of the parties as they understood it at the time a contract was written. If it were otherwise it would enable the said J. J. Tilson to take an estate by curtesy in his deceased wife's real estate and distributive share in her personal property, which rights it was recognized did not exist at the time the contract was made, and on account of which fact the contract was signed by Lavina Tilson, and yet had she survived him she would have been deprived of her right of dower and distributive share in his estate.

"Your complainant alleges that the law does not permit parties to accept the benefit of a state of affairs which existed by reason of legal enactment and subsequently evade the obligation and permit the consideration to go for naught because the law may be subsequently changed.

"Your complainant alleges, therefore, that regardless of any rights which she may have under the contract set up in the first part of this bill, she is an heir of the said Lavina Shupe Tilson; and under said agreement of May 1, 1914, the said J. J. Tilson has no right in either the real or personal property of Lavina Shupe Tilson and should be required to account therefor to those entitled thereto.

"Your complainant further alleges that where a contract has been made to be performed in the future and where, on account of promises made, consideration has been paid by either party and the promisor has received all the benefit to which she is entitled by reason of reliance upon her promise and dies without carrying that promise into effect, the court will require such promise to be fulfilled and such contract carried out, and in this case will decree that the said property which the said Lavina S. Tilson con-

tracted to bequeath and devise to complainant be turned over and conveyed to her."

The defendants, who are heirs at law of Lavina Tilson, stated two grounds of demurrer:

"1. The agreement or contract alleged in the bill between Lavina Tilson and Mrs. J. W. H. Powell and her father and mother is too vague, indefinite and uncertain.

"2. The contract alleged in said bill is not such a contract as is enforceable either in law or in equity. See *Wohlford* v. *Wohlford,* 121 Va. 699, 93 S. E. 629, and Virginia Code, section 5561."

The grounds of demurrer stated and relied upon by J. J. Tilson are as follows: (1) The written contract between him and his wife was a post-nuptial contract which is void because a contingent right of dower cannot be relinquished by deed or contract from the wife directly to the husband. (2) "A court of equity could not write into this instrument [*i. e.,* the contract of May 1, 1914] a promise passing from J. J. Tilson to his wife; nor construe the instrument as a mutual conveyance of dower and curtesy rights, because in that case there would be a void agreement on one side, and a valid agreement on the other, which is impossible in law or equity."

On May 13, 1932, the court entered a decree sustaining the demurrer "in so far as the bill * * attempts to enforce a contract between Lavina Shupe and the parents of the complainant, and with the complainant herself," and also in so far as it "alleges that the said J. J. Tilson is not entitled to his curtesy in said property."

On May 16, 1932, the court entered a final decree in the cause which, so far as is here material, reads: "The demurrer in this cause having been sustained, and the plaintiff not asking to amend, this bill is dismissed."

From these two decrees Mrs. Powell has appealed, assigning three errors: (1) The court erred in refusing to enforce the alleged oral contract of Lavina Tilson to bequeath and devise to Mrs. Powell all her property real and personal. (2) The court erred in not holding that

by the contract of May 1, 1914, J. J. Tilson made a valid relinquishment of all rights in the property, real and personal, of his wife to which he was entitled by virtue of his marriage to her. (3) If the court was correct in refusing to enforce the oral contract, it still erred in dismissing the bill without granting the complainant's prayer for a partition of the property of Lavina Tilson among her and the other heirs and distributees of Lavina Tilson.

None of these assignments of error are well made.

In *Hale* v. *Hale,* 90 Va. 728, 19 S. E. 739, this court had under consideration the circumstances under which a court of equity will let in evidence of and enforce an oral contract for the devise of lands on the ground that there has been a performance by the party seeking enforcement of the alleged contract. In this case, at p. 732 of 90 Va., 19 S. E. 739, the court said:

"Acts of part-performance by the party seeking specific execution, to take a case out of the statute, must be of such *an unequivocal nature as of themselves to be evidence of the existence of an agreement;* as, for example, where, under a parol agreement to sell land, the purchaser is put into possession and proceeds to make improvements. * * In the language of Lord Hardwicke, the act of part-performance 'must be such as could be done with no other view or design than to perform the agreement.' * * * 'The principle of the cases,' said Sir William Grant in *Frame* v. *Dawson,* 14 Ves. 387, 'is that the act must be of such a nature that, if stated, it would *of itself* infer the existence of some agreement; and *then* parol evidence is admitted to show what the agreement is.' "

This court again reiterated this rule in the case of *Plunkett* v. *Bryant,* 101 Va. 814, 818-819, 45 S. E. 742, 744, where it said:

"The act or acts of part performance must be of such an unequivocal nature as of themselves to be evidence of the execution [*sic,* existence] of an agreement. They must be of such as could be done with no other view or design than to perform the agreement. They must unequivo-

cally refer to and result from. an agreement and be such as the party would not·have done unless on account of that very agreement, and with a direct view to its performance. The act must be sufficient of itself, without any other information or evidence to satisfy the court from the circumstances it has created, and the relations it has formed, that they are only consistent with the assumption of the existence of a contract, the terms of which equity will enforce. Until acts are alleged which, of themselves, imply the existence of such a contract, parol evidence to show its terms is inadmissible."

See also *Frizzell* v. *Frizzell,* 149 Va. 815, 823, 141 S. E. 868, where the language in the above paragraph is quoted with approval.

■ In the instant case the alleged acts of performance by Mrs. Powell and/or her parents do not of themselves so unequivocally imply the existence of a contract to compensate Mrs. Powell therefor as to let in parol evidence of the alleged contract.

■ This brings us to the point made by J. J. Tilson that a married woman cannot by a post-nuptial contract relinquish to her husband her contingent right of dower in property of which he has not previously disposed. This point is well made.

Section 5135, Code Va. 1919, provides: "A married woman may, by uniting with her husband in a deed or contract, dispose of her contingent right of dower in real estate; or, if the husband has previously disposed of his interest in real estate in which she is entitled to a contingent right of dower, she may thereafter, but not before, dispose of her contingent right of dower in the same by her sole act as if she were unmarried."

Judge Burks, who was one of the revisors of the Code of 1919, in commenting on the revision of this section, says: "The extent of the power of a married woman over her contingent right of dower is somewhat doubtful under the law now in force. (Acts 1899-1900, p. 291.) The revision seeks to remove all doubt on this subject, and

makes it clear that the wife cannot convey her contingent right of dower to any person whomsoever (which, of course, includes the husband) while the husband owns the real estate in question." Burks' Address on the Code of 1919, 5 Va. L. R. (N. S.) 97, 109.

But aside from this, we are of the opinion that no contract on the part of J. J. Tilson to relinquish his marital rights in the property of his wife can properly be implied from the language of the contract of May 1, 1914, between them.

The contract of May 1, 1914, is not made a part of the bill, but in some way it has found its way into the matter certified up to us. The language from which an agreement by J. J. Tilson to relinquish his marital rights must be implied, if at all, is as follows: "Aside from the consideration above named, the said party of the first part makes this relinquishment, because of the fact that her said husband would not have any interest in her estate, if he should survive her, they not having any children, and because of the further fact, that said first party owns a good farm in her own right, and has ample means to provide for herself, should she survive her said husband, and she wishes his property to go to his children without any encumbrance thereon, so far as her dower right is concerned."

This language, and the part thereof quoted in the bill, merely states a reason for Lavina Tilson's willingness to relinquish her contingent right of dower in consideration for so small a sum as $100, and not a consideration for such attempted relinquishment. The recital of the reason upon or motive from which a person acts in making a contract, does not necessarily make it a consideration for the making of the contract.

The bill does not allege the date of the death of Lavina Tilson more definitely than that it took place after the Code of 1919 became effective. But the plain implication of the allegations of the bill is that she died after the

enactment of the statutes below quoted relating to curtesy and to descents and distributions.

Acts 1922, p. 861, ch. 491, as amended by Acts 1924, p. 508, ch. 345, as amended by Acts 1930, p. 619, ch. 230[2] (Michie's Code, Va. 1930, section 5139a), so far as is here material, reads as follows:

"A surviving husband shall be entitled to an estate by the curtesy in one-third of all the real estate whereof his wife, or any other to her use, was, at any time, during the coverture, seized in fact or in law of an estate of inheritance, unless his right to such curtesy shall have been lawfully barred or relinquished; but if she die wholly intestate and without issue of the marriage which was dissolved by her death or of a former marriage, her surviving husband shall be entitled to an estate by the curtesy in one-third of such real estate, as aforesaid, and, in addition thereto, subject to the rights of his wife's creditors, in all the residue of such real estate of his wife; * *. The fact that the husband conveyed, or caused to be conveyed, the real estate to the wife, or to her use, shall not bar his curtesy therein, nor shall it be a requisite to curtesy that the wife shall have had a child born alive during the coverture, * * *."

Section 5273, Code Va. 1919, as amended by Acts 1926,[3] pp. 596, 597, ch. 329, provides that if any married person shall die intestate, after the payment of funeral expenses, charge of administration and debts, the surplus of his or her personal property shall pass as follows:

"If the intestate was married, the surviving husband or wife shall be entitled to one-third of such surplus, if the intestate left surviving children or their descendants of the marriage which was dissolved by the death of the intestate, or of a former marriage, or by legal adoption; but if no such children or their descendants survive, the sur-

---

[2] So far as is here material, the amendments of 1924 and 1930 did not change the law as enacted by Acts 1922, p. 861, ch. 491.

[3] So far as is here material the amendment of 1926 did not change the law on this subject as established by section 5273.

viving husband or wife shall be entitled to the whole or such surplus; except, where the intestate was a married .woman and left only illegitimate children or their descendants, it is provided that the surviving husband shall be. entitled to only one-third of such surplus."

In view. of these statutory provisions, and the fact that there has been no valid relinquishment by him of the rights to which he is entitled as the surviving husband of Lavina Tilson, J. J. Tilson became entitled at his wife's death to all her personal property, after the payment of her debts, and to an estate for his life in all the real estate of which she died seized. This being true, Mrs. Powell's suit,.in so far as it is a suit for partition, has been prematurely brought.

Since prior to the Code of 1849, the right to have partition of real estate in Virginia has been regulated by statutes providing that "tenants in common, joint tenants, and co-parceners shall be compellable to make partition." Code 1849, ch. 34, section 1, p. 526; Code 1887, section 2562; Code 1919, section 5279. See, also, *Phillips* v. *Wells,* 147 Va. 1030, 1042, 133 S. E. 581. But under such statutes one of several remaindermen, who are entitled to the remainder in a tract of land after the expiration of an estate therein for the life of another, cannot compel a partition of the land during the continuance of the life estate, unless, perhaps, he has acquired the life estate.[4] *Seibel* v. *Rapp,* 85 Va. 28, 6 S. E. 478; *Merritt* v. *Hughes,* 36 W. Va. 356, 15 S. E. 56.

We find no error in the decree appealed from and it will be affirmed.

*Affirmed.*

---

[4] For a case in which it was held that where a tenant of land by the curtesy purchases the reversionary interest of one of the three heirs, the tenant by the curtesy may compel partition, see *Otley* v. *McAlpine's Heirs,* 2 Gratt. (43 Va.) 341. For criticism of *Otley* v. *McAlpine,* see *Brown* v. *Brown,* 67 W. Va. 251, 67 S. E. 596, 28 L. R. A. (N. S.) 125, 21 Ann. Cas. 263.