## Staunton

IDA WHITLOCK PAIR, MARY ALICE PAIR, BARTHOLOMEW AND PERCY LEE PAIR v. BRUTUS W. ROOK, MARY ROOK LYERLY, KATHLEEN ROOK LIGON, ALICE ROOK LIGON, RACHEL CORLETTE ROOK, ADMINISTRA- TRIX OF THE ESTATE OF P. I. ROOK, DE- CEASED, RACHEL CORLETTE ROOK, IN HER OWN RIGHT.

September 10, 1953.

Record No. 4076.

Present, All the Justices.

The opinion states the case.

*Thomas A. Williams, Thomas A. Williams, Jr., W. W. Beverley* and *Beverley H. Randolph, Jr.,* for the appellants.

*A. S. Harrison, Jr.* and *L. C. Harrell, Jr.,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This is a suit brought by appellants for the specific performance of an alleged parol agreement between Mary Moore Rook and her husband, P. I. Rook, for the devise of all of the property of P. I. Rook, which agreement is sought to be taken out of the operation of the statute of frauds upon the ground of part performance.

P. I. Rook was an uneducated, hardworking, successful business man, who accumulated a large and valuable estate. He was married three times. He first married Mary Lee Rook, by whom he had a son, Brutus W. Rook, born August 9, 1901. Mary Lee Rook died shortly after the birth of her son. P. I. Rook married Mary Moore Rook in 1904, and lived with her until she died May 15, 1950. She had the benefit of some education and assisted her husband in his business affairs. By her last will and testament, dated February 8, 1940, she devised all of her property to her "beloved husband," and named him as the executor of her will.

On May 19, 1951, P. I. Rook married the appellee, Rachel Corlette Rook, which marriage was terminated by his death four days later. The widow qualified as administratrix of his estate.

Brutus W. Rook, the son and only child of P. I. Rook, married and had three children, Mary Rook Lyerly, Kathleen Rook Ligon and Alice Rook Ligon, who are among the named appellees.

The appellant, Ida Whitlock Pair, was born on January 23, 1907. She is a daughter of the late Mrs. Carrie Moore Whitlock, a sister of Mary Moore Rook. After the death of Carrie Moore Whitlock, Mary Moore Rook took her infant niece, Ida, into her home in 1909. Ida and Brutus W. Rook, son of P. I. Rook by his first marriage, were reared together as though they were sister and brother, and the children of P. I. and Mary Moore Rook. Brutus was eventually set up in business in North Carolina by his father. Ida continued to live with the Rooks until she was married. After her marriage, she and her husband lived on and operated a farm owned by P. I. Rook. Ida and her two children, Mary Alice Pair Bartholomew and Percy Lee Pair, are the three appellants herein.

P. I. Rook executed two wills prior to his marriage to Rachel Corlette Rook. By the terms of his first will made in March, 1950, he devised certain specified portions and parcels of his property in fee simple to his wife, Mary Moore Rook and divided the remaining portions among the appellants and appellees to this cause, except Rachel Corlette Rook, either in fee simple or for life with remainder to their children.

On October 21, 1950, Rook made his second will, revoking the first. In this will he gave and devised to Brutus W. Rook and his children and to Ida Whitlock Pair and her children the properties devised in his first will to his deceased wife, Mary Moore Rook. The second will was revoked by his marriage to Rachel Corlette Rook, by virtue of § 64-58 of the 1950 Code of Virginia, and P. I. Rook consequently died intestate.

The bill of complaint filed by appellants alleged:

"That P. I. Rook and Mary Moore Rook in their later years became concerned about the distribution of their property being particularly anxious about Ida Whitlock Pair and her children, since she was not their daughter, and accordingly reached an understanding about the distribution of their property which became and amounted to a mutually binding contract. This contract provided for the distribution of both realty and personalty in a definite and set way if the said Mary Moore Rook should survive her husband, which eventuality did not occur however, and for the distribution of both realty and personalty in a definite and set way if P. I. Rook should survive his wife, which eventuality did occur. Mary Moore Rook died May 15, 1950. The agreement as to the eventuality that did occur is as follows:

"A. Mary Moore Rook was to leave all her estate to her husband by her will.

"B. P. I. Rook was to leave his estate as follows:

(Here follow twenty-six paragraphs listing the estate of P. I. Rook and its proposed distribution, as set out in Rook's will, dated October 21, 1950.)

"That Mary Moore Rook performed her part of the agreement by leaving a will devising and bequeathing her entire estate to P. I. Rook, * * * .

"That P. I. Rook attempted to carry out his part of the agreement by making a will October 21, 1950, * * * .

"That said attempted will of P. I. Rook is somewhat different" from the agreement above set out because he later bought other property and exchanged certain parcels of land for other parcels.

"That P. I. Rook inadvertently and contrary to his will and wishes was prevented from carrying out his part of said contract because of his unexpected and untimely death within four days" after he married Rachel Corlette Rook, and before he had an opportunity to make a new will, and because of the effect and operation of § 64-58 of the 1950 Code of Virginia.

"That to permit the estate of P. I. Rook to pass under" the Virginia statute of descent and distribution, by reason of his death intestate, "would work a fraud on the deceased Mary Moore Rook, and on the beneficiaries of her contract with P. I. Rook, she having performed her part of the agreement and left all her estate to her husband, P. I. Rook, and further directly contrary to the well known and often expressed wishes of P. I. Rook, * * * ."

The appellees demurred to the bill on the grounds that the facts alleged were not sufficient to take the contract from under the operation of the statute of frauds, in that the alleged parol agreement is not certain and definite in its terms, and that the acts alleged to be in part performance do not refer to, result from, or show that they were made in pursuance of any agreement.

Appellants thereupon took the evidence of E. E. Eanes, an attorney who prepared the wills of both Mary Moore Rook and P. I. Rook, hereinbefore referred to, and filed his deposition as a part of the record.

Mr. Eanes testified that he prepared the will of Mrs. Mary Moore Rook, and the only reason she gave him for executing it was that she "was sick and wanted to make a will;" that he and his secretary were the only persons present and the sole subscribing witnesses thereto; and that, at no time, did she say or intimate that she had any agreement, contract, or understanding with her husband concerning the manner in which she and he would dispose of their properties. Mr. Eanes said that he had acted as counsel for P. I. Rook subsequent to December, 1945; that in 1950, Rook consulted him with reference to writing his will, and brought him a rough memorandum of his property and the manner in which he desired to dispose of the same; that he found it necessary to go to the clerk's office and make a complete list of the real estate owned by Rook; that Rook designated the person or persons to whom he desired specific portions or parcels of his properties devised; that pursuant to these instructions he prepared the will of March, 1950; and that,

at no time, did Rook ever mention or refer to any agreement or understanding which he might have had with Mary Moore Rook concerning the disposition of his or her property.

Eanes declared that after the death of Mary Moore Rook, he told P. I. Rook that he ought to change his will; and that finally Rook came to his office and executed the will of October 21, 1950. In this second will, the property which had been formerly given to Mary Moore Rook was devised to Ida Whitlock Pair and Brutus W. Rook and their children, in specified parcels and portions.

On Wednesday or Thursday, May 16th or 17th, 1951, Rook requested Eanes to come to his home after lunch, so that he might talk with him about drawing up a will. ´Eanes complied with the request. It developed that Rook expected to contract a third marriage two or three days later. He was advised by Eanes that because of the Virginia statute, it would be necessary that the will be executed after the marriage but not before. Rook did not discuss any changes in his former will. He only said that he was going to make another will, stating "I want to protect the lady I am going to marry." He did not mention any agreement or contract with Mary Moore Rook with respect to the disposition of their properties. Rook promised to come to Eanes' office on Friday morning, May 18th, at which time his will was to be drawn for execution after his marriage. Rook failed to keep his appointment with Eanes, was married on May 19, 1951, went on his honeymoon, and died on May 23, 1951, without making a new will.

Appellants then filed an amended bill for specific performance. In this bill they alleged that P. I. Rook and Mary Moore Rook "reached a preliminary or general understanding, that Mary Moore Rook should leave her property to P. I. Rook, and that P. I. Rook should look out for the complainants in the distribution of his and his wife's combined estate; that accordingly, having confidence in her husband to carry out his promise to her," she executed her will of February 8, 1940, leaving all of her property to him;

that thereafter Mary Moore Rook "frequently asked her husband to perform his part of the agreement by making his will, and finally threatened to change or destroy her will if he did not do so;" and that "finally P. I. Rook began steps to make his will in pursuance of his agreement, and he and Mary Moore Rook then discussed details of distribution, making written notes of their conclusions, and even asking Ida Whitlock Pair in what way she wished title to her real estate to be, and whether she should receive her real estate for life and remainder to her children, and Ida Whitlock Pair agreeing thereto;" and that further acts of part performance were done by both P. I. Rook and Mary Moore Rook, in that during their lifetime, they put appellants and Kathleen Rook Ligon and Alice Rook Ligon, in possession of certain real estate in recognition of the existence of the alleged agreement.

In neither bill did appellants allege that there was any written evidence to support the existence of a contract between P. I. and Mary Moore Rook other than the wills of the parties referred to, or that there was any part performance of such contract by Mrs. Rook other than her death testate leaving all of her property to her husband and the joint act of herself and husband in putting some of the parties in possession of certain real estate. The allegation in the amended bill with reference to "written notes of their conclusions" refers to the list of the real properties of Rook, and the names of the intended beneficiaries, which Rook gave to his attorney at the time his will was prepared. The list is not signed or dated, and the handwriting of several persons appears thereon. It contains no mention of any contract or agreement between P. I. Rook and Mary Moore Rook.

Appellees filed demurrers to the amended bill. The case came on to be heard upon the original bill, the amended bill, the demurrers to each bill, the will of Mary Moore Rook, the revoked wills of P. I. Rook, the exhibits attached to the bills, and the deposition of Eanes, including the notes used by Rook and Eanes in the preparation of Rook's will.

Upon consideration whereof, the learned trial court held that the agreement alleged and relied upon by the appellants was not certain, definite and unequivocal in its terms; that the execution of the will of Mary Moore Rook and her death testate leaving all of her property to her husband, P. I. Rook, considered alone, or together with the circumstances surrounding its execution was not such an act of part performance as showed the existence of any contract which referred to, resulted from, or which was made in pursuance of the agreement alleged; that the wills executed by P. I. Rook and his acts in allowing some of the appellants and appellees, all of whom were related to him or his wife, to occupy certain of his properties prior to his death did not constitute any admission or recognition of the existence of the agreement claimed; and that appellants had to rely only upon the acts of Mary Moore Rook, through whom they claimed, and not through P. I. Rook, through whom appellees claim. The court thereupon sustained the demurrers of the appellees and dismissed the bills of the appellants.

Appellants thereafter moved the court to set aside its decree dismissing their bills, and asked leave to file a supplemental bill. In their supplemental bill, their allegations are substantially the same as those in the former bills. In it they alleged that the agreement claimed is reasonably certain, definite and unequivocal in its terms, and that the acts, things and circumstances recited are corroborative of the alleged agreement, and sufficient to impress the property of P. I. Rook and Mary Moore Rook with an equitable trust, resulting or constructive, in their favor. They prayed for alternative relief, either by decreeing specific performance or the impressment of a trust. The trial court, upon consideration, denied leave to file the supplemental bill.

Appellants assign error to the rulings of the trial court, both as to its action in sustaining the demurrers of appellees and in refusing to permit appellants to file their supplemental bill. They insist that the allegations of their bills were sufficient to present a case to be heard on the

merits; that they should have been allowed to proceed and to introduce additional evidence to prove that the act of part performance relied on referred to, or was in consequence of, the alleged agreement between Mary Moore Rook and P. I. Rook; and that the bills presented an issue which could be decided only by the production of evidence and not by recourse to the pleadings alone.

In considering the issue raised by the demurrers, that is, the sufficiency of the bills of complaint, the only facts to be considered are those which are alleged in the bills. These allegations present two questions,—whether the alleged parol agreement was certain and definite in its terms, and, if so, whether the act of Mary Moore Rook in dying testate, and leaving all of her property to her husband, P. I. Rook, was an act in part performance of an agreement with her husband.

The specific performance of a contract is not a matter of absolute right, but rests in the sound judicial discretion of a court of equity, controlled by established doctrines and principles. 17 M. J., Specific Performance, § 4, page 9.

In order to entitle one to specific performance in equity, the first requisite of a contract is certainty and definiteness in its terms, and mutuality in both obligation and remedy. 17 M. J., Specific Performance, § 19 *et seq.*, page 32 *et seq.*

An act of part performance sufficient to take a case out of the statute of frauds must be the definite and unequivocal act of the party relying thereon, or that of his predecessor in title or claim, strictly referable to the contract, with a design to perform it, and be such as but for the agreement would not have been done. Minor's Institutes (1st Ed.), Vol. II, page 855. We have repeatedly said that this principle of equity is as well settled as any of the acknowledged doctrines of equitable jurisprudence. *Wright* v. *Pucket*, 22 Gratt. (63 Va.) 370; 8 M. J., Frauds, Statute of, § 35, page 801, and cases cited.

The three leading Virginia cases and the cases most often cited on the subject of part performance are *Wright* v.

*Pucket, supra, Hale* v. *Hale,* 90 Va. 728, 19 S. E. 739; and *Plunkett* v. *Bryant,* 101 Va. 814, 45 S. E. 742.

In *Plunkett* v. *Bryant, supra,* at page 818, Judge Harrison, after citing *Hale* v. *Hale, supra,* and *Wright* v. *Pucket, supra,* had this to say:

"The principles upon which a court of equity will avoid the statute of frauds and enforce a parol agreement for the sale of land are well settled. They are briefly but clearly stated in *Wright* v. *Pucket, supra,* to be as follows: '1st. The parol agreement relied on must be certain and definite in its terms. 2nd. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. 3rd. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation. These requisites must concur before a court of equity will decree specific execution.' The act or acts of part performance must be of such an unequivocal nature as of themselves to be evidence of the execution (existence) of an agreement. They must be such as could be done with no other view or design than to perform the agreement. They must unequivocally refer to and result from an agreement and be such as the party would not have done unless on account of that very agreement, and with a direct view to its performance. The act must be sufficient of itself, without any other information or evidence to satisfy the court from the circumstances it has created, and the relations it has formed, that they are only consistent with the assumption of the existence of a contract, the terms of which equity will enforce. Until acts are alleged which, of themselves, imply the existence of such a contract, parol evidence to show its terms is inadmissible." (Citing cases.)

The principles above set out have been reaffirmed by us time after time. *Pierce, etc.* v. *Catron, etc.,* 23 Gratt. (64 Va.) 588, 595; *Burruss* v. *Nelson's Ex'or.,* 132 Va. 17, 21, 110 S. E. 254; *Frizzell* v. *Frizzell,* 149 Va. 815, 823,

141 S. E. 868; *Powell* v. *Tilson*, 161 Va. 318, 327, 170 S. E. 750.

In *Hale* v. *Hale, supra,* the plaintiff and her sister agreed to make wills so that the survivor would get the whole estate, and this was done. The sister subsequently married, and died without leaving issue, in the belief that her will was valid. The plaintiff allowed her will to remain in full force as originally written. The court held that the deceased sister's will was revoked by her marriage, and that while a person may, by contract, bind himself to dispose of his property by will in a particular way, such contract is within the statute of frauds, and that a memorandum in writing to take the contract out of the statute of frauds must contain all the essential elements of the contract, except the consideration, without recourse to parol proof. It was further held that this requirement was not met when the only memorandum is one of two reciprocal wills, neither of which alludes to the other or refers to any other writing. We said at page 732 of 90 Va.:

"Acts of part performance by the party seeking specific execution, to take a case out of the statute, must be of such *an unequivocal nature as of themselves to be evidence of the existence of an agreement;* as, for example, where, under a parol agreement to sell land, the purchaser is put into possession, and proceeds to make improvements. 2 Min. Insts. (4th ed.), 853; 3 Pom. Eq., sec. 1409. In the language of Lord Hardwicke, the act of part performance 'must be such as could be done with no other view or design than to perform the agreement.' *Gunter* v. *Halsey*, Amb., 586. 'The principle of the cases,' said Sir William Grant in *Frame* v. *Dawson*, 14 Ves., 387, 'is that the act must be of such a nature that, if stated, it would *of itself* infer the existence of some agreement; and *then* parol evidence is admitted to show what the agreement is.'"

In considering the circumstances under which evidence may be admitted in support of an oral contract for the devise of lands on the ground of part performance by

the party seeking to enforce the alleged contract, this is said on page 733 of 90 Va.:

"Hence, until such acts are shown as of themselves imply the existence of some contract, parol evidence to show the terms of the contract relied on is inadmissible * * * . Now the alleged acts of part performance in the present case, taken singularly or collectively, do not bring the case within these principles. The making and preserving the wills, under the circumstances stated in the bill, while they are acts consistent with, are yet not demonstrative of, the existence of any contract between the parties; or, in other words, they do not unequivocally show that there was a contract. *Non constat,* the wills were not made from motives of love and affection and independently of any contract or agreement; and, this being so, parol evidence to establish the alleged contract would not be admissible."

This rule was restated and reaffirmed in *Plunkett* v. *Bryant, supra* (101 Va. 819), and *Powell* v. *Tilson, supra* (161 Va. at page 327).

In *Frizzell* v. *Frizzell, supra,* the testator made a will devising all his property to a nephew. After testator's death, a posthumous child was born to his widow. The nephew claimed that he was entitled to all property devised him by the will, by virtue of a parol contract wherein the testator had promised and agreed to leave him the property. He set out various acts of part performance on his part and alleged consideration for the promise sought to be enforced. The court held that from the acts performed by the nephew, it was just as consistent to assume that they were in consideration of the benefits he was then receiving as to assume that they were in performance of an existing contract to devise the property to him, and denied specific performance.

The acts relied on as part performance must be consistent with no theory other than the existence of the alleged oral contract. Appellants must necessarily claim through Mary Moore Rook, that is, rely upon her act of part performance

and not upon anything that Rook was shown to have done or failed to do.

"A plaintiff seeking specific performance of a parol contract for the sale of the land must rely upon his own acts of part performance and not on the repudiated acts of the defendants, * * *." 8 M. J., Frauds, Statute of, § 35, page 804. 49 Am. Jur., Statutes of Frauds, § 436, page 741.

We feel no need to cite cases from other jurisdictions in view of the established doctrine in Virginia. It is sufficient to say that the authorities generally are in accord with our decisions.

In 49 Am. Jur., Statute of Frauds, § 429, page 736, this is aptly said:

"The acts of part performance must themselves be such as to show or imply the existence of some contract between the parties, such as that alleged, before the court will admit parol evidence of the terms of the agreement. Concisely stated, what is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done. Equity declines to act on words, although the legal remedy is imperfect, unless the words are confirmed and illuminated by deeds. Although the acts relied upon need not indicate all the terms of the agreement, they must be in conformity with its provisions."

In 81 C. J. S., Specific Performance, § 54, page 538, we find:

"It is a general rule, applicable to nearly, if not quite, all acts relied on as part performance, within the rule that an oral contract may be specifically enforced where it has been partly performed, that every such act must be unequivocally and, ordinarily, exclusively referable to the contract, in the sense that it must of itself give rise to an inference of the existence of the contract, and that the doing of it cannot otherwise reasonably be accounted for, and that it must clearly appear to have been done in pursuance of the contract, so as to result from the contract and not from some other relation, or, as it has been expressed, the act must refer

to, result from, or be in pursuance of, the contract sought to be enforced."

In 37 C. J. S., Frauds, Statute of, § 250, page 759, this is said:

"What facts will be held to constitute part performance sufficient to take an oral contract out of the statute of frauds must, of necessity, vary in each individual case, and each case must be considered separately. The acts done must be clear and definite and unequivocal, and must have been done strictly with reference to the contract, for, if referable to anything else, they are not available."

The certainty of the contract relied on must appear from the pleadings and the act of part performance alleged must of itself unequivocally evidence the existence of an agreement. Here, appellants alleged that the parties had "reached an understanding about the distribution of their property, which became and amounted to a mutually binding contract," and that they "reached a preliminary or general understanding that Mary Moore Rook should leave her property to P. I. Rook and that P. I. Rook should look out for the complainants in the distribution of his and his wife's combined estate." These allegations contain nothing definite as to specific properties, or the amount to be left to particular individuals. They are indefinite, uncertain and equivocal, and do not meet the requirements of the law.

The principal act of part performance which appellants rely on is the execution of the will of Mary Moore Rook and her death without revoking it. Her will is a mere will and nothing more. It neither alludes to any contract nor refers to any other writing. She had no children. We are not told how she acquired her property, and we have been informed only that it was small compared with that of her husband. The language of her will and the disposition of her property indicate that she was devoted to her husband. Her devise to him, under the circumstances, is the natural and normal act of a wife, and fully consistent with her love and affection for her husband. It is not of

such an unequivocal nature of itself as to furnish evidence of the existence of any agreement had between her and her husband. Although it be conceded that she threatened to change her will if P. I. Rook did not dispose of his property in a manner satisfactory to her, and that she pleaded with him for ten years to execute a will, these circumstances imply reservations and indefiniteness, and not a definite, certain and unambiguous contract between them. It would rather seem that if an agreement had been entered into they would have executed mutual or separate wills, at or about the same time, covering such property as each of them owned.

The bills of complaint do not allege the date when the alleged contract was entered into. The two wills executed by P. I. Rook disposed of numerous parcels of land to various persons, including the parties hereto, except his third wife. A considerable portion of his estate was acquired subsequent to the execution of the will of Mary Moore Rook and some subsequent to the date of his first will. The later acquired property could hardly have been in contemplation on February 8, 1940, when Mary Moore Rook executed her will ten years prior to the execution of Rook's first will. Hunt as we can, we find nothing done by either party that was inconsistent with the simple desire to dispose of their property in the manner each desired.

Nor do we think that because P. I. Rook may have permitted the appellants and some of the appellees to rent, occupy or use some of his property that such a fact shows or implies that there was any parol agreement between him and his wife to make a will upon the terms alleged. It was only natural that he should favor his relatives and those of his wife. If he allowed any of them to occupy his property, without rent, his action was consistent with the love and affection which he had for them. It was not consistent only with an agreement that he would devise his property to them.

We do not doubt that P. I. Rook intended to devise some of his property to the appellants. This was a natural desire

in view of his relationship to them, and is evidenced by the provisions of the wills he executed. It was also natural and normal for him to wish to protect his third wife. What provisions he intended to make for her and for such other persons as were the natural objects of his bounty we do not know. According to the record, he knew that upon entering into another marriage his will, previously made, would be revoked by operation of law. Nevertheless, he entered into his third marriage, and failed to execute a new will. Consequently, he died intestate, the provisions of our statutes applied, and we must interpret and apply those provisions as they are.

" 'Around the devolution of estates of decedents, the law has thrown its most jealous safeguards; * * * . No device whereby these safeguards may be weakened should be recognized or for a moment tolerated.' " *Clarkson* v. *Bliley*, 185 Va. 82, 93, 38 S. E. (2d) 22; *Spinks* v. *Rice*, 187 Va. 730, 743, 47 S. E. (2d) 424. Cf. *Rice* v. *Hartman*, 84 Va. 251, 256, 4 S. E. 621.

Appellants rely on the case of *Clark* v. *Atkins*, 188 Va. 668, 51 S. E. (2d) 222. In that case, Atkins not only alleged and established part performance by him; but he also alleged and set up circumstances and conditions which were wholly inconsistent with any conclusion except that Clark had entered into a contract with him. Here, the devise by Mary Moore Rook to her husband relied on as her act of part performance was a natural and normal act, wholly consistent with the relationship that existed between them.

The language of Mary Moore Rook's will supplies us with no key to what was alleged to be promised by her husband. The exhibits and testimony filed by appellants afford no support to their allegations or contentions. It does not clearly appear from the act or acts of part performance alleged on the part of Mary Moore Rook that they would not have been performed in the absence of the

alleged agreement, and without a direct view to its fulfillment.

Applying the principles stated to the case before us, we think there are two sound objections to the interference of a court of equity in this case. First, the agreement relied on is too uncertain and indefinite in its terms. It is based on allegations of a most general and indefinite nature. Second, the acts of part performance alleged do not of themselves refer to any agreement, or show that they were done in pursuance thereof, or resulted from such agreement. In other words, they are not of such an unequivocal nature as to be evidence of the existence of any agreement. They are not consistent only with the assumption of a contract and inconsistent with any other theory.

The supplemental bill puts the appellants in no better position than they were before. Its presentation is manifestly an attempt to bypass the former rulings of the court. The allegations are materially the same as in the original and amended bills, the only difference being in the manner of expressing appellants' new contention, and in their prayer for relief. The new form added no matter which had not been previously relied on. No actual fraud is alleged or claimed. No alleged breach of a confidential relationship between husband and wife by misrepresentation or unfairness is charged.

All of the material acts and matters pleaded in the supplemental bill were before the trial court when it passed upon the demurrers to the original and amended bills. The relief asked for in the supplemental bill was not inconsistent with the specific relief asked for in the original and amended bills of complaint, and it could have been granted under the prayer for general relief in the former bills. *Winston* v. *Winston*, 144 Va. 848, 856, 130 S. E. 784.

Appellants, in their brief, contend that their allegations set up a constructive rather than a resulting trust.

While it is sometimes difficult to distinguish between constructive and resulting trusts, we think it rather clear that neither is created here on the basis of the facts alleged.

In 54 Am. Jur., Trusts, § 193, page 152, it is said that resulting trusts are (1) those arising "on a failure of an express trust or purpose and (2) those arising on a conveyance to one person on a consideration from another, but the classification is not exclusive, * * * ." Neither situation exists here.

A constructive trust, on the other hand, "is a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." 54 Am. Jur., Trusts, § 218, page 167. It is substantially an appropriate remedy against unjust enrichment, usually after an act of fraud, or breach of confidence or duty. *Id.*, § 219, page 169.

Appellants do not charge that there was anything dishonest in the failure of P. I. Rook to rewrite his will after his third marriage. His failure to do so did not amount to a tortious refusal to carry out "an agreement and understanding that Mary Moore Rook would leave her estate to her husband, and he, in turn, would see that Ida Whitlock Pair and her children were 'taken care of' or 'looked out for.' " The word "understanding" is most indefinite and equivocal. It is not indicative of the terms. What would amount to "taken care of" or "looked out for" depends upon many circumstances and different views. No such general agreement or understanding, if made, is capable of execution by a court.

For the reasons stated, we are of opinion that the trial court did not err in entering the decrees of May 15, 1952, and June 3, 1952, complained of, and that the said decrees should be affirmed.

*Affirmed.*