WILLIAM GILBERT JONES AND LUCY P. JONES v.
W. E. CLARY AND F. G. POYTHRESS.

April 20, 1953.

Record No. 4053.

Present, Hudgins, C. J., and Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Y. Melvin Hodges,* for appellant.

*J. G. Hutcheson,* for appellee.

HUDGINS, C. J., delivered the opinion of the court.

W. E. Clary and F. G. Poythress instituted this suit to compel William Gilbert Jones and wife to convey to them a certain parcel of land which they allege William Gilbert Jones, as their agent, purchased for them at a judicial sale, and in violation of his contract caused to be conveyed to himself. The trial court held that the contract of agency was established, that the parcel of land standing in Jones' name was impressed with a trust in favor of complainants, and in its decree appointed a commissioner to convey it to complainants upon payment of the purchase price. This appeal was awarded to review that decree.

Appellants contend that the evidence was insufficient to establish the alleged contract, and that even if such contract was made, it was made for the purpose of stifling, and actually did stifle bidding on the property at the judicial sale, and was, therefore, void.

It appears that in a suit instituted by the same William Gilbert Jones, who is one of the appellants in this suit, against Lucy K. Jones and others, for partition of the real estate of which B. F. Jones died seized and possessed, L. J. Hammack and A. S. Harrison, Jr., as special commissioners, advertised the said real estate for sale at public auction on July 30, 1951. Among the twelve or more tracts or parcels of land advertised for sale was a parcel of 1.5 acres situated in or near Gasburg, Brunswick county, known as "the B. F. Jones Gin House and Lot." At the sale the various tracts of land sold for the aggregate sum of $95,000. The gin house lot was cried out to William Gilbert Jones for $495. There being no exceptions to the commissioners' report, the sale was confirmed and the commissioners, pursuant to decretal order, executed a deed conveying the gin house lot to William Gilbert Jones. After that decree became final this suit was instituted.

Appellees proved by clear and convincing testimony that William Gilbert Jones agreed to act as their agent at the judicial sale, with authority to bid as high as $500 on the gin house property; and that relying upon this agreement, they did not bid on the property as they otherwise would have done.

The principle applicable to this class of contracts is stated in A. L. I. Restatement, Restitution § 194 (2), p. 795, as follows: "A person who agrees with another to purchase property on

behalf of the other and purchases the property for himself individually holds it upon a constructive trust for the other, even though he is not under a duty to purchase the property for the other.'' In the Comment to Subsection (2), page 799, it is said: ''The rule stated in this Section is applicable where one person agrees to purchase the property on behalf of another, whether he undertakes to purchase it in the name of the other, or in his own name, or in their joint names.''

It follows that appellees are entitled to the gin house property, unless the agreement, as appellants contend, was designed and calculated to suppress and stifle bidding at the judicial sale.

■ The general rule is that a judicial sale must be free from all conduct which tends to suppress bidding or which interferes, in any manner, with the full, fair and free sale of property under the control of the court. A party whose right or interest in property depends upon a judicial sale at which he made efforts to stifle bidding, will be denied affirmative relief. 11 Mich. Jur., Judicial Sales and Rentings, sec. 45, p. 346.

It was held in *Barnes* v. *Morrison,* 97 Va. 372, 34 S. E. 93, that a secret combination and agreement amongst persons interested in bidding, whereby they stipulate to refrain from bidding, in order to prevent competition, and to lower the selling price of the property, is illegal. But it is not necessarily illegal for two or more persons to agree that one of them shall purchase for their joint benefit property sold at a judicial sale. Whether such agreement or combination is lawful or otherwise, depends upon the intention of the parties and the character and effect of the arrangement, as ascertained from the evidence in each particular case.

The crux of the illegality of such an agreement is the intention of the parties. If the parties intended to depress the price of the property to be sold and to prevent competitive bidding at the sale, the agreement is illegal. But if the intention of the parties was honest and fair and there was no purpose to prevent or restrain competitive bidding, the agreement is valid and enforceable between the parties. *Raper* v. *Thorn,* 202 Okla. 235, 211 Pac. 2d 1007, 14 A. L. R. 2d 1260; 50 C. J. S., Judicial Sales, sec. 22, p. 609.

■ Appellants contend that appellees made the contract for the purpose of depressing the price of the property and to

prevent competitive bidding at the judicial sale. This contention is not supported by the evidence.

It is not unusual for a prospective purchaser at a judicial sale to have another person bid for him. This practice was inferentially approved by this court in *Hardy* v. *Coley,* 114 Va. 570, 77 S. E. 458. There the question was whether to accept or reject a ten per cent upset bid which was submitted by a party who was unable to attend the judicial sale. The court, in rejecting the upset bid, said: "No reason is suggested why he (the upset bidder) could not have been represented by an agent." See also *Chandler* v. *Chandler's Adm'rs.*, 174 Va. 95, 5 S. E. 2d 523; *Moore* v. *Triplett,* 96 Va. 603, 32 S. E. 50.

Appellees owned land adjacent to the property in question. Clary was a neighbor and friend of appellants. He told Jones that if he or any of the other heirs were interested in buying the property for themselves, he, Clary, would not bid on it. After being assured that the Jones heirs were not interested in buying the property, Clary and Poythress made the contract whereby Jones agreed to bid on the gin house property for them.

Jones, as an heir, owned a 1/24 undivided interest in all the property offered for sale. Naturally he was interested in obtaining the highest possible price. On the other hand, appellees, as prospective purchasers, desired to buy the property as cheaply as possible, and determined to pay no more than $500 for it. Jones was under no obligation to agree to act as agent for appellees. Simply because he was interested in the property bringing the market value did not preclude him from bidding on the property for appellees. The fact that Clary discussed the sale of this property rather fully with Jones, an interested party, tends to show that he was acting in good faith. Neither Clary nor Poythress did anything to prevent others from bidding on the property.

Jones testified that before the sale, in a conference with some of the other heirs, a minimum price was fixed on each piece of property advertised for sale, and that $750 was the minimum price placed on the gin house property. He testified further that he was authorized by some of the heirs to bid on the property for them to insure that it brought a fair and reasonable price, and if he became the purchaser, they agreed to pool their resources and "help him" pay the purchase price. Jones

bid on eight of the twelve tracts of land sold and bought one tract for himself.

It is not clear from the evidence just what bidding arrangement Jones had with the heirs. W. W. Wright, husband of one of the heirs, testified that his wife was interested in buying the gin house lot, but did not bid on it because she knew that Jones was bidding on it. J. A. Wright, the husband of another heir, testified that ''just a small part of the Jones family got together and decided to make it bring a good price * * *. It was understood * * * that Gilbert was going to run this property to a certain figure'' for the benefit of all. A brother testified that the understanding was that if Jones bought the property at the sale he could take it or hold it for the benefit of all. Jones himself testified ''I did not ask anybody not to bid against me. It didn't make me any difference,'' and on the gin house property ''I was bidding for Gilbert Jones.''

The only conclusion to be drawn from the evidence is that Jones' co-heirs refrained from bidding because they thought Jones was bidding for them, and appellees likewise refrained from bidding because they thought he was bidding for them. Doubtless, if the misunderstanding between Jones and his co-heirs, and the agreement between him and appellees, had been brought to the attention of the court in the partition suit before the sale was confirmed, the $495 bid would have been rejected and the court would have ordered a resale of the property. This was not done. The heirs appeared to be satisfied with the sale to Jones at the price of $495. Their objection was to a sale to appellees, or an ''outsider'' at that price. However, their approval or disapproval of the sale cannot be considered in this case. The question is whether William Gilbert Jones or appellees are entitled to the property.

Whatever the bidding arrangements Jones had with his co-heirs may have been, there is not a scintilla of evidence tending to show that appellees knew of it. There was no duty upon appellees to see that the property brought its market value. So long as they acted in good faith and did nothing to suppress, stifle or chill the bidding, they had a right to buy the property themselves, or through an agent, as cheaply as possible.

''The courts will look to the intention of the parties, and if that is fair and honest, and the primary purpose is not to suppress competition, but to protect their own rights or advance

their own interests, and there is no fraudulent purpose to injure or defraud others interested in the result of the sale, the agreement is not unlawful." 5 Am. Jur., Auctions, § 27, p. 464.

William Gilbert Jones, either through ignorance or wilful design to defraud, by his bidding arrangement with his co-heirs, and his agreement with appellees, put himself in the position to dominate the bidding on the gin house lot at the judicial sale. If there was any stifling of bidding at such sale, he, and he alone, was responsible therefor. To permit him to retain the property under these circumstances would enable him to profit by his own wrong.

The decree of the trial court is affirmed.

*Affirmed.*