**In re CARDIAN MORTGAGE CORPORATION, Debtor.**

**CITIZENS FEDERAL BANK, a Federal Savings Bank, Plaintiff,**

v.

**CARDIAN MORTGAGE CORPORATION, Defendant.**

**Bankruptcy No. 89–00202–RT.**
**Adv. No. 89–0857–RT.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 6, 1990.

Supplemental Opinion Sept. 28, 1990.

H. Slayton Dabney, Jr., McGuire, Woods, Battle & Boothe, Richmond, Va., for Citizens Federal Bank.

Winthrop A. Short, Jr., Dennis T. Lewandowski, Kaufman & Canoles, Norfolk, Va., for Cardian Mortg. Corp./debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Citizens Federal Bank ("Citizens") filed a complaint against the chapter 11 debtor Cardian Mortgage Corporation ("Cardian") seeking a turnover from Cardian in the amount of $643,759.11 plus interest, fees and costs. Both parties filed motions for summary judgment, and hearing on the motions was held on May 22, 1990. The court has considered the extensive memoranda of law and arguments of counsel and makes the following rulings on the motions:

(1) Citizens' motion for summary judgment is granted in the amount of $201,011.41. Otherwise the motion is denied.

(2) Cardian's motion for summary judgment is granted except to the extent of $201,011.41, and except for Citizens' claim to the amount of $2,962.27 described in paragraphs 17–20 of the complaint.

### Findings Of Fact

Cardian filed a chapter 11 bankruptcy petition on January 30, 1989, and since that time has operated as debtor in possession.

During the year 1988 and previously Cardian held the contractual right to service various pools of mortgage loans from Pioneer Federal Savings and Loan Association, n/k/a Pioneer Savings Bank, including the right to service mortgage pools owned by Federal Home Loan Mortgage Corporation ("Freddie Mac"). As servicer of mortgage loans beneficially owned by entities such as Freddie Mac, Cardian collected mortgage payments and remitted funds to the mortgage pool owners, for which servicing Cardian earned a fee.

Prior to September 16, 1988, Cardian's mortgage pool servicing accounts were maintained in depository or custodial checking accounts with Ultimate Savings Bank, F.S.B. ("Ultimate"). On that date Ultimate was closed, and plaintiff Citizens acquired the Ultimate depository accounts including the account Cardian used for Freddie Mac funds.

After acquiring the Ultimate deposit accounts, Citizens planned to convert the data processing for these accounts to its own system. On or about November 10, 1988, Citizens notified the checking account customers on the former Ultimate accounts that the conversion of the accounts would take place on December 10, 1988, and that the customers would receive a new supply of checks with their new account numbers during the week prior to conversion; this letter did not provide the customers with their new account numbers.

Cardian's account at Ultimate which included the mortgage pool funds of Freddie Mac (and others) bore number 25668. The new number assigned this account by Citizens was 38000235.

The five claims described below which Citizens asserts in its complaint for turnover arose as a result of processing or bookkeeping errors made by Citizens during the period of transition of data processing from the Ultimate system to Citizens' system.

CLAIM ONE.

As part of its banking business Citizens maintained a clearing account (no. 3–360–545) with the Federal Home Loan Bank of Atlanta. On December 9, 1988, this account was charged (debited) in the amount of $234,154.49. These funds were transferred to Freddie Mac and represented a payment of Cardian collections held in Cardi-

an's account no. 38000235 maintained with Citizens. Since the transfer to Freddie Mac represented a payment by Citizens on behalf of Cardian, an equal amount was supposed to have been removed from or charged to Cardian's account no. 38000235 maintained with Citizens. However, due to an error by Citizens, Cardian's account no. 38000235 was never charged (debited) for this payment.

## CLAIMS TWO and THREE.

On December 27, 1988, Citizens made on Cardian's behalf two wire transfers of funds: (1) $629.56 to Atlantic Permanent Savings & Loan, and (2) $3,989.97 to Pioneer Savings Bank. These transfers should have been charged to Cardian's account no. 38000235 maintained with Citizens. However, as a result of Citizens' errors, these funds were never charged (debited) to Cardian's account.

## CLAIM FOUR.

On January 6, 1989, Citizens' account no. 3–360–545 maintained with the Federal Home Loan Bank of Atlanta was charged (debited) the sum of $201,011.41. These funds were transferred to Freddie Mac and represented a payment of Cardian collections held in Cardian's account no. 38000235 maintained with Citizens. Since the transfer to Freddie Mac represented a payment by Citizens on behalf of Cardian, an equal amount was supposed to have been removed from or charged to Cardian's account no. 38000235. Instead, however, due to Citizens' error, this account was increased (credited) by the sum of $201,011.41. As a result of these transactions Citizens suffered a double loss. It had paid Freddie Mac $201,011.41 out of its own funds and also increased Cardian's account no. 38000235 by $201,011.41.

On the date Cardian filed its chapter 11 bankruptcy petition, its account no. 38000235 maintained with Citizens held the sum of $2,900,000.00. The errors described under the above four claims were not discovered until after Cardian had filed its bankruptcy petition and had removed all funds in account no. 38000235 to another bank. Therefore, none of these sums has been paid to Citizens.

## CLAIM FIVE.

On January 5, 1989, Citizens transmitted $2,962.27 to Maryland National Bank on behalf of Marcasco Co., Inc., in payment of check no. 16118, dated September 1, 1988; this check had been drawn by Cardian on its account no. 3010004129 maintained with Citizens. Cardian's account no. 3010004129 had been closed on October 4, 1988, and consequently the check was rejected for payment. Citizens contacted Cardian to request the substitution of another account number that could be charged for the check. However, Cardian failed to respond. On May 19, 1989, Citizens exercised its statutory right of setoff by debiting the amount of $2,962.27 to Cardian's account no. 38000219 maintained with Citizens. Counsel for Cardian then notified Citizens that Cardian had filed a bankruptcy petition. Because the automatic stay prevented Citizens from exercising its right of setoff, Citizens reinstated the $2,962.27 to Cardian's account no. 38000219. The check remains unpaid by Cardian.

## Discussion and Conclusions

Citizens claims to have a beneficial ownership of funds held by Cardian resulting from the transactions described above. It is thus fundamental to Citizens' position that the funds do not properly constitute assets of Cardian's bankruptcy estate pursuant to 11 U.S.C. § 541. The Supreme Court has examined the legislative history of the Bankruptcy Code and determined that the bankruptcy estate does not include "property of others held by the debtor in trust at the time of the filing of the petition." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983).

As will be seen, the principle issue here is whether Cardian holds the funds in constructive trust for Citizens. The determination of a property interest is to be made under appropriate state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93

(2nd Cir.1989) (citing *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir.1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). *See* 4 L. King, *Collier On Bankruptcy*, ¶ 541.02[1], pages 541–10–11 (15th ed. 1989).

■ Here, since both parties conducted their business together in Virginia, the court looks to Virginia law for its constructive trust analysis. *See Howard's Appliance Corp.*, 874 F.2d at 93; *In re Crotts*, 87 B.R. 418 (Bankr.E.D.Va.1988). *See also In re American International Airways, Inc.*, 44 B.R. 143 (Bankr.E.D.Pa.1984) (applying New Jersey law to construe constructive trust remedies).[1]

Citizens' claims can be separated into two distinct types: (a) an erroneous credit of $201,011.41 and (b) unreimbursed remittances in the total amount of $442,747.70.

ERRONEOUS CREDIT

On January 6, 1989, Citizens remitted the sum of $201,011.41 to Freddie Mac on behalf of Cardian. Instead of charging Cardian's Freddie Mac account by the amount of this remittance, Citizens mistakenly credited or increased the account in this amount. Citizens argues that Cardian holds the funds represented by this erroneous credit in constructive trust for the benefit of Citizens.

■ Virginia law permits a constructive trust to be imposed in the situation where the alleged constructive trustee acquires property or a fund of money from the beneficiary. *See, e.g., Jones v. Clary*, 194 Va. 804, 75 S.E.2d 504 (1953); *Pair v. Rook*, 195 Va. 196, 213, 77 S.E.2d 395, 404 (1953); *Sweeny v. Patton*, 134 Va. 117, 113 S.E. 715 (1922). Where the retention of ownership would unjustly enrich the title holder, the title holder is subject to a duty to convey to one entitled to the property in equity. *Leonard v. Counts*, 221 Va. 582, 590, 272 S.E.2d 190, 195–96 (1980).

■ Hence, Virginia law facially supports imposition of a constructive trust in favor of Citizens for the erroneous credit. However, in the matter of constructive trusts, there are other issues to be resolved under the facts of our case. Since Virginia law has not addressed some of these issues, the court must look to other authorities.

It is well established that where a trust relationship exists between a debtor and creditor, and the res is commingled with other interests, the creditor must trace the res in order to enjoy constructive trust relief. *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.)*, 817 F.2d 682 (10th Cir.1987); *Lane Bryant, Inc. v. Vichele Tops, Inc. (In re Vichele Tops, Inc.)*, 62 B.R. 788 (Bankr.E.D.N.Y.1986); *American Express Travel Related Services Co. v. Felton's Foodway, Inc. (In re Felton's Foodway, Inc.)*, 49 B.R. 106 (Bankr.M.D.Fla.1985). *See also Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924); *Sonnenschein v. Reliance Insurance Co.*, 353 F.2d 935 (2d Cir.1965).

Cardian's Freddie Mac account, while a trust account, was also held for the benefit of other mortgage pool owners, and any beneficial interest of Citizens was co-mingled with that of the other beneficiaries, as well as the service fee interests of Cardian. Cardian argues that after filing bankruptcy its Freddie Mac account fell to a negative balance, and therefore Citizens cannot "trace" the res upon which to establish a constructive trust.

Citizens responds to Cardian's "negative balance" argument by asserting that the account fell to a negative balance only after the filing for bankruptcy. Citizens ar-

---

**1.** Cardian argues that federal bankruptcy policy should control the constructive trust analysis, citing *Torres v. Eastlick (In re North American Coin & Currency, Ltd.)*, 767 F.2d 1573 (9th Cir.) *cert. denied*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1985); *In re Shurtleff*, 778 F.2d 1416, 1421 (9th Cir.1985); *Wisconsin v. Reese (In re Kennedy & Cohen, Inc.)*, 612 F.2d 963 (5th Cir.) *cert. denied*, 449 U.S. 833, 101 S.Ct. 103, 66

L.Ed.2d 38 (1980); and *In re First Fidelity Financial Services, Inc.*, 36 B.R. 508, 512 (Bankr.S.D. Fla.1983). These decisions will not be followed by this court to the extent they suggest (as *Torres* does in particular) that the existence of a constructive trust in bankruptcy should be determined by a stricter standard than applicable state law. *See Howard's Appliance Corp.*, 874 F.2d at 93 n. 5.

gues that the tracing period ends at the time of filing, at which time the account held $2,900,000.00.[2]

Cardian cites *Vichele* for the proposition that the res must be traced postpetition, pointing to language stating "the claimant must be able to show that the funds *presently on hand* are either the same funds ... or are the traceable proceeds thereof." *Vichele* at 791 (emphasis added). It does not appear, however, that the question of postpetition tracing was ever argued in *Vichele,* nor does it appear relevant to the outcome in that case. Accordingly this court does not bind itself to the broad language found in *Vichele.*

Cardian also cites what it sees as a practical problem resulting from limiting a tracing requirement to the date of filing. Citing *American Hull Insurance Syndicate v. United States Lines, Inc. (In re United States Lines, Inc.),* 79 B.R. 542 (Bankr.S.D. N.Y.1987), Cardian maintains that to preserve constructive trust status after the res is dissipated postpetition would create a priority claim as to the debtor's other funds in order to provide complete relief. This would grant a superpriority not provided by the Bankruptcy Code over other creditors. The other side of this coin, however, is that the other creditors may have benefitted from the dissipation of the trust res by its providing the estate with funds to operate or with assets to pay out on allowed claims.

■ This court agrees with Citizens and adopts the rule that the proper time period for tracing trust assets ends upon the filing of a petition in bankruptcy. Property held in trust by the debtor does not become the property of the estate under 11 U.S.C. § 541. Thus the critical time for determining whether the funds were property of Cardian's estate was the time of filing. *See Felton's Foodway,* 49 B.R. at 109. *See also Mahan & Rowsey,* 817 F.2d at 684–85; *United States Department of Energy v. Seneca Oil Co. (In re Seneca Oil Co.),* 76 B.R. 810 (W.D.Okla. 1985). In other words, Cardian should not be able to convert property not belonging

to it prepetition to an asset of the bankruptcy estate.

■ The parties have agreed that the Freddie Mac account held $2,900,000.00 at the time Cardian filed its chapter 11 petition. Accordingly, it may be presumed the account still held the funds represented by the erroneous credit of $201,011.41. Therefore, Citizens' motion for summary judgment in this amount will be granted and Cardian's motion denied in the like amount.

## UNREIMBURSED REMITTANCES

Citizens' claim for unreimbursed remittances of $442,747.70 represents funds which Citizens paid out for Cardian but failed to charge to Cardian's account. This amount is comprised of the following transactions:

1. Citizens' remittance of $234,154.49 to Freddie Mac on December 9, 1988;

2. Citizens' wire transfers of $629.56 to Atlantic Permanent Savings Bank, and of $3,989.97 to Pioneer Savings Bank, both occurring on December 27, 1988;

3. Citizens' remittance of $201,011.41 to Freddie Mac on January 6, 1989; and

4. Citizens' transfer of $2,962.27 to Maryland National Bank on behalf of Marcasco Co. Inc. on January 5, 1989, in payment of a check drawn on a separate account maintained by Cardian at Citizens.

It should be noted that the $2,962.27 amount for the Marcasco check is not the subject of Citizens' motion for summary judgment but is the subject of Cardian's motion for summary judgment.

### A. Constructive Trust

On its motion for summary judgment, Citizens argues that it should enjoy a constructive trust for $439,785.43 of the unreimbursed remittances represented by the transfers to mortgage pool owners occurring on December 9 and 27 of 1988, and January 6, 1989.

The court's previous constructive trust analysis in connection with the erroneous

**2.** Neither party has argued the necessity for prepetition tracing of the account.

credit dealt with constructive trusts arising from transfers of property or a fund of money to the alleged constructive trustee from or on behalf of the beneficiary. The critical distinction between the unreimbursed remittances and the erroneous credit is that the unreimbursed remittances do not involve any kind of transfer to Cardian, the alleged constructive trustee.

 The rule of constructive trusts in Virginia has virtually always been stated in terms requiring some kind of legal or equitable transfer of a res to the constructive trustee. *See Campbell v. Corpening*, 230 Va. 45, 49, 334 S.E.2d 589, 592 (1985); *Leonard v. Counts*, 221 Va. 582, 590, 272 S.E.2d 190, 195–96 (1980); *Pair v. Rook*, 195 Va. 196, 213, 77 S.E.2d 395, 404 (1953). In fact, Citizens has cited no case where a constructive trust was imposed without a transfer to the constructive trustee. There does not, therefore, appear to be any res upon which to impose a trust since Cardian did not obtain title to any funds from or on behalf of Citizens with respect to the unreimbursed remittances. The only event that arguably established a res was a failure to debit the account which, at best, merely created a debt from Cardian to Citizens. *See Bennet v. First & Merchants National Bank*, 233 Va. 355, 360, 355 S.E.2d 888, 891 (1987). Mere failure to pay a debt does not give rise to a constructive trust. *McKee v. Paradise*, 299 U.S. 119, 122, 57 S.Ct. 124, 125, 81 L.Ed. 75 (1936).

### B. Subrogation

In addition to the constructive trust argument, Citizens has recently raised a new argument that it is entitled to be subrogated to the rights of the mortgage pool owners of the unreimbursed remittances in the amount of $439,785.43. Although not pleaded in the complaint, this court will consider the merits of this argument on motion for summary judgment.

 "Subrogation is the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt." *Federal Land Bank of Baltimore v. Joynes*, 179 Va. 394, 401, 18 S.E.2d 917, 920 (1942). There appear to be two broad types of subrogation applied in Virginia: legal and conventional subrogation. Conventional subrogation arises by express or implied agreement with the debtor. Legal subrogation "arises by operation of the laws where one having a liability or right, or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security held by the creditor whom he paid." *Id.*

 Subrogation "is not a matter of right but is granted or withheld as the equities of a particular case may require." *Thompson v. Miller*, 195 Va. 513, 520, 79 S.E.2d 643, 647 (1954). *See also Federal Land Bank*, 179 Va. at 402, 18 S.E.2d at 920. Thus, any analysis of subrogation in this case requires the court to examine the equities involved. The underlying rationale for subrogation is to lay a debt on one more fundamentally liable so as not to allow that person to "enrich himself by escaping his obligation." *Federal Land Bank*, 179 Va. at 402, 18 S.E.2d at 920.

 When applying the foregoing analysis to this case, this court finds that the equities do not favor the subrogation of Citizens to any rights of the mortgage pool owners in Cardian's account. The primary reason is the existence of the intervening beneficial interests in the funds. In addition, it does not appear that Cardian will be "enriched" by escaping any obligation. Cardian does not dispute the existence of the debt, and the claim is eligible to be allowed under § 502 of the Bankruptcy Code.

Therefore, Citizens' motion for summary judgment for the unreimbursed remittances in the amount of $439,785.43 will be denied, and Cardian's motion for summary judgment with respect to these sums will be granted.

Cardian's motion for summary judgment with respect to the remaining $2,962.27, representing the amount for the Marcasco check, will be denied. Neither a constructive trust nor subrogation analysis are ap-

plicable. Citizens is entitled to put on evidence for its claim to these funds.

A separate order will be entered.

## SUPPLEMENTAL
## MEMORANDUM OPINION

This court previously considered motions for summary judgment filed by each party to this adversary proceeding, which is based upon Citizens Federal Bank's complaint for turnover of funds. By order entered June 6, 1990, the court partially granted and partially denied each of the motions for reasons stated in a memorandum opinion entered on the same date. In summary, the court found that on the debtor's filing of its chapter 11 petition, Citizens held a constructive trust in funds held in a Cardian account maintained with Citizens in the amount of $201,011.41. Therefore, this sum represented property of Citizens and never became property of the debtor's chapter 11 estate under 11 U.S.C. § 541. To this extent then, the court granted Citizens' motion for summary judgment.

However, the court denied Citizens' motion as to other funds maintained in a Cardian account (the custodial account) with Citizens in the total amount of $442,747.70. The fundamental distinction between the two rulings of the court—one in Citizens' favor, the other against—is that the $201,011.41 represented funds of Citizens which were placed in Cardian's account (erroneous credit); the $442,747.70 represented funds that Citizens paid out for Cardian but failed to charge to Cardian's account (unreimbursed remittances).

Subsequent to the court's ruling of June 6, 1990, Citizens filed a motion to alter or amend the court's order and opinion. Primarily, Citizens again seeks to obtain summary judgment in its favor with respect to the unreimbursed remittances of $442,747.70. In response, Cardian has filed a motion to dismiss Citizens' motion to alter or amend.

In addition to its motion to alter or amend, Citizens has filed a motion to amend its complaint to include its theory of subrogation. At this time, Citizens' motion

to amend will be denied; however, the court acknowledges that it entertained argument and addressed the issue on the merits. Should the case come to trial, Citizens may again request leave to amend the complaint.

The facts of this case are adequately presented in the court's memorandum opinion and will not be reiterated here except as needed to clarify necessary points.

Citizens argues that this court made errors of fact and law in the previous memorandum opinion and asserts two discernable grounds upon which to alter the court's June 6 order: 1) Citizens has satisfied any requirement of a transfer necessary for a constructive trust by paying the balance of the custodial account over to Crestar Bank on February 10, 1989, at Cardian's request, and that, therefore, constructive trust relief should be imposed with respect to the unreimbursed remittances; and 2) the equities of this case favor subrogation of Citizens to the funds in the Custodial Account.

In addition to requesting the court to reconsider the prior ruling in its motion to alter or amend, Citizens also asks for an award of prejudgment interest.

## PROPRIETY OF RULE 59(e) MOTION TO ALTER OR AMEND

 Cardian responds initially to Citizens' motion to alter or amend by arguing that pursuant to Rule 59(e) of the Federal Rules of Civil Procedure the motion is improperly brought since it raises issues that were argued or could have been argued at the prior hearing at which this court granted partial summary judgment for both parties. Cardian asserts that the motion to alter or amend should therefore be dismissed. Although District Judge Warriner of this district issued several opinions denying the availability of 59(e) motions for the purpose of reconsidering judgments where issues had been or could have been argued originally, it is nevertheless within this court's discretion to consider Citizens' motion. *See Thomas v. United States Parole Commission*, 672 F.Supp. 256 (E.D.Va. 1987). *But see Davis v. Lukhard*, 106 F.R.D. 317, 318 (E.D.Va.1984), *vacated as*

*moot,* 788 F.2d 973 (4th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986); *Johnson v. City of Richmond,* 102 F.R.D. 623, 623–24 (E.D.Va.1984); *Durkin v. Taylor,* 444 F.Supp. 879, 889 (E.D.Va. 1977).

Since it would be my desire to correct demonstrated errors in legal rulings, I have determined to consider Citizens' new argument. Cardian's motion to dismiss is therefore denied.

## SUFFICIENCY OF TRANSFER FOR CONSTRUCTIVE TRUST TO BE IMPOSED

Citizens' counsel argued in the memorandum in support of the motion to alter or amend, that this court erred in ruling that a transfer is necessary under Virginia law for the creation of a constructive trust. However, at the hearing on the new motion counsel acknowledged that this is an issue for appeal and did not argue this point.

Citizens does, however, argue as its major point that there was indeed a transfer sufficient to satisfy this requirement as determined by the court. Citizens' position is that its transfer at Cardian's request of the balance of the custodial account to another bank on February 10, 1989, after the petition in bankruptcy in this case was filed, satisfied the transfer requirement. Citizens contends that this was a transfer of property upon which a constructive trust should be imposed.

The court rejects this new argument and declines to impose a constructive trust on the funds with respect to the unreimbursed remittances. Citizens' claim for reimbursement arose upon its payment of the drafts, not on its transfer of the custodial account's balance to Crestar Bank. Consequently, the court finds no relationship between Citizens' admitted error in failing to debit the account after paying out drafts drawn upon it and its eventual transfer of the balance of the entire custodial account.

Furthermore, Citizens' new theory regarding the transfer is inconsistent with the tracing analysis adopted by this court on page 10 of the earlier opinion. The court established that as to the erroneous credit amount of $201,011.41, the necessity of tracing the res ended upon the filing of the petition in bankruptcy. At that time, whatever was property of the debtor became property of the debtor's estate. However, the necessary event for the additional constructive trust relief sought by Citizens for the unreimbursed remittances—the transfer of funds—had not taken place at this time. As a result, Cardian's interest in the account became property of the estate by virtue of 11 U.S.C. § 541, and Citizens' claims for reimbursement became a claim against the estate.

The constructive trust previously imposed by the court did not create any super-priority claim for Citizens; rather, it merely prevented the estate from establishing a greater right than Citizens with respect to the funds. If Citizens' new argument were to be accepted, it would effectively permit Citizens to turn a non-priority claim against the estate into a priority claim, simply by virtue of transferring the account at the debtor's request. In any event, since this transfer occurred after the filing of the petition in bankruptcy this court believes that Citizens would be required to trace the funds to those presently on hand. This it cannot do, since it appears that the account went into a negative balance in October 1989.

## SUBROGATION

Citizens next argues that the equities favor subrogation, relying on language from the previous memorandum opinion: "The primary reason [why the equities do not favor subrogation] is the existence of the intervening beneficial interests in the funds." Memorandum Opinion at 261. Citizens seeks to establish that there are "excess funds" in the account of $700,-000.00 and that the only claims to this fund are those of FHLMC in the amount of $14,488.12 for fees and penalties and Cardian for its servicing fees. Citizens argues that since it created the excess funds (presumably by its failure properly to debit the account when the original remittances were made) that it should be entitled to recover under subrogation principles.

The term "excess funds" is, nevertheless, a misnomer, since Cardian claims more than the balance of the account as servicing fees. Cardian correctly points out that to allow subrogation permitting Citizens to claim those funds would prejudice the creditors of Cardian's estate. In addition, this court does not find unjust enrichment, since Citizens had the opportunity to pursue its claim as a creditor in the case. Citizens' failure to preserve its claim notwithstanding, this court is not willing to use the guise of subrogation in order to disregard the priority scheme and claim procedure set forth in the Bankruptcy Code.

## PREJUDGMENT INTEREST

■ Citizens' final argument in this motion requests prejudgment interest in its award. As the law applied for constructive trusts was the law of Virginia, this court will also apply the law of Virginia to determine the availability of prejudgment interest. *Crampton v. Dominion Bank of Bristol, N.A., (In re H.P. King Co.)*, 64 B.R. 487, 490 (Bankr.E.D.N.C.1986). According to section 8.01–382 of the Code of Virginia, "in any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va.Code Ann. section 8.01–382 (1984 repl.vol.). This section has been construed to allow prejudgment interest even where a bona fide legal dispute is involved. *Gill v. Rollins Protective Services Co.*, 836 F.2d 194 (4th Cir.1987).

■ This court will award prejudgment interest to Citizens with respect to the funds awarded by the summary judgment order of June 6, 1990. However, as Citizens acknowledges, the award of prejudgment interest on the claim must be limited to the actual interest Cardian earned on the funds awarded to Citizens. *See N.S.C. Contractors, Inc. v. Twin Parks Limited Partnership (In re Twin Parks Limited Partnership)*, 720 F.2d 1374, 1377 (4th Cir. 1983). Accordingly, this court will award prejudgment interest as requested by Citi-

zens' counsel to the extent that Cardian earned interest on the funds awarded. The court has been advised that counsel for the parties have stipulated that the amount of prejudgment interest to be awarded under the court's ruling is $10,200.94.

An appropriate order will be entered.

## ORDER

For the reasons expressed in the Supplemental Memorandum Opinion entered simultaneously with this order,

IT IS ORDERED that (1) Citizens' Motion to File Amended Complaint is denied, it being acknowledged that the court has entertained argument on the issue of subrogation and has addressed the issue on the merits, and in the event the case ever comes to trial, counsel may against request leave to amend the complaint; (2) Cardian's Motion to Dismiss Citizens' Motion to Alter or Amend Judgment is denied; and (3) Citizens' Motion to Alter or Amend Judgment is denied, except that Citizens' request for prejudgment interest is allowed in the amount of $10,200.94, representing the amount of interest actually earned by Cardian on the $201,011.41 previously awarded to Citizens from October 27, 1989, when Cardian placed this amount of funds in an interest-bearing account, until June 6, 1990, the date judgment in said amount was awarded to Citizens.