**In re PRIME CONSTRUCTION CORPORATION, Debtor.**

**PRIME CONSTRUCTION CORPORATION, Plaintiff,**

**v.**

**RIVERSIDE DEVELOPMENT JOINT VENTURE A-1 and Heritage Bank & Trust, Defendants.**

**Bankruptcy No. 93–22166–T.**
**Adv. Pro. No. 93–2063–T.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

June 29, 1993.

Jane B. Wrightson, Marcus, Santoro & Kozak, Portsmouth, VA, for debtor.

Michael P. Cotter, Neil S. Lowenstein, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Riverside.

Robert C. Stackhouse, Norfolk, VA, for Heritage Bank & Trust.

Debera F. Conlon, Asst. U.S. Trustee, Office of the U.S. Trustee, Norfolk, VA.

**MEMORANDUM OPINION**

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The chapter 11 debtor in possession filed this adversary proceeding by a motion for turnover of property of the estate. The subject of the motion is debtor's bank account at Heritage Bank and Trust Co., which was subject to a prepetition writ of attachment in state court.

Trial was held on an expedited basis on April 30, 1993, after which the court ruled from the bench that the motion would be granted but with restrictions on debtor's use of a portion of the funds. This opinion supplements the court's bench ruling.

*Facts*

Debtor is a construction contractor and at the time of filing bankruptcy was the general contractor on a building renovation under a construction contract with an affiliate of the property owner Riverside Development Joint Venture. Under the contract, which was entered into in December 1992, debtor had applied for and received payment from Riverside of three construction draws as follows:

| | Work Completed Date | Amount | Payment Date |
|---|---|---|---|
| 1. | December 22, 1992 | $16,847.00 | January 11, 1993 |
| 2. | January 23, 1993 | $35,172.00 | February 1993 |
| 3. | March 12, 1993 | $38,907.00 | April 13, 1993 |

Each of debtor's three applications for payment to Riverside contained a schedule of the values of materials used and for work performed by the debtor's various subcontractors on the project. These material suppliers and subcontractors looked to debtor for payment.

The applications for payment were submitted to Riverside on a form entitled, "Application And Certificate For Payment" (AIA Document G702). Each of the forms was signed on behalf of the debtor under the following certification:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, *that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner*, and that current payment shown herein is now due. (Emphasis added)

Defendant's Exhibit D.

At the time debtor submitted the third payment request in March 1993, it was substantially delinquent in its obligations to the subcontractors and material suppliers on the Riverside job. Thus debtor had not in fact complied with the underscored portion of the above certification.[1] Moreover, debtor had determined that it was not financially able to pay the construction costs certified to in the third application.

Shortly after Riverside delivered its check to debtor in the amount of $38,907.00 on April 13 or 14, 1993, Riverside's employees learned that debtor was not paying its subcontractors and materialmen whose claims were reflected on the third draw request. This information was confirmed by debtor's President who indicated to Riverside that because of debtor's financial problems he was not certain when payment would be made.

Riverside immediately contacted its attorneys, who caused a writ of attachment to be issued in state circuit court against

---

1. Although the date debtor's officers began discussing bankruptcy with counsel is not established, it could be inferred from testimony of debtor's president that these discussions had already begun at the time of the third payment request.

debtor's bank account in Heritage Bank & Trust Co. on April 16, 1993.

The debtor filed its chapter 11 petition on April 26, 1993, and the instant motion for turnover on April 29, 1993. Debtor continues to operate its construction business as debtor in possession.

At the time debtor filed bankruptcy its bank account at Heritage held a balance in the approximate amount of $50,800.00. This balance included the full amount of the third construction draw in the amount of $38,907.00.

### Position of Parties

Debtor's motion asserts that the attached bank account constitutes an unencumbered asset of the chapter 11 estate under 11 U.S.C. § 541(a) and accordingly that the attachment against its bank account should be vacated and all funds turned over to debtor.

Riverside maintains that the amount of $38,907.00 represented by the construction draw is subject to a constructive trust for the benefit of Riverside and debtor's subcontractors and materialmen. These funds are therefore not assets of debtor's bankruptcy estate, and turnover should not be required.

### Discussion and Conclusions of Law

Section 541(a)(1) of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate which consists (with exceptions) of all legal and equitable interests of the debtor in property. 11 U.S.C. § 541(a)(1). While there are few exceptions to this general rule, the United States Supreme Court has recognized that property of others held by the debtor in trust at the time of filing the bankruptcy petition is "plainly excluded" from the bankruptcy estate. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983); *see also* 4 Lawrence P. King, Collier on Bankruptcy ¶ 541.13 (15th ed. 1993); *Citizens Federal Bank v. Cardian Mortgage Corporation (In re Cardian Mortgage)*, 122 B.R. 255, 258–59 (Bankr.E.D.Va. 1990).

In the present case, at the time the debtor filed its bankruptcy petition on April 29, 1993, it held a bank account which included a deposit in the amount of $38,907.00; this deposit, made on April 14, 1993, represented a construction draw check received by the debtor pursuant to the debtor's third payment request under a construction contract. The payment had been made by the property owner, Riverside Development Joint Venture, after debtor had certified to having completed a portion of the construction project and incurring material and subcontractor costs; the debtor's payment request also certified that it had paid all material and subcontractor costs reflected in the two previous payment requests.

In fact debtor had not paid all prior construction costs and was not in financial position to pay the costs reflected in this most recent request. Accordingly, the court must conclude that the debtor did not intend to pay its then current labor and material claims except as it might be able to do so at some unknown future date, if ever. When debtor's president acknowledged to Riverside that the current charges were not to be paid, Riverside caused its counsel to obtain a state court attachment of debtor's bank account.

After debtor filed its bankruptcy petition, Riverside refused to release the attachment. This court granted an expedited hearing on debtor's adversary proceeding seeking to require Riverside and debtor's bank to release the attached bank account, which debtor maintains is an asset of the chapter 11 estate. At the hearing the court heard rather limited testimony of interested parties, including that of a subcontractor and a material supplier on the contract who were owed substantial sums by debtor.

Riverside's counsel argued that the $38,907.00 portion of debtor's bank account is held by debtor under a constructive trust, relying primarily on principles stated in this court's ruling in *In re Cardian Mortgage Corporation*, 122 B.R. at 258–59. In *Cardian*, this court held that funds held by a debtor under a constructive trust (as

determined under Virginia law) did not constitute assets of the debtor's estate under § 541(a). Riverside's counsel asserted in substance that a trust arose in the funds in issue here because the debtor defrauded Riverside and the other parties involved in the project by accepting the third construction draw after having misrepresented prior payments and without ability or intention to pay the current underlying labor and material claims.

Under Virginia law and generally, a constructive trust may be imposed upon real or personal property that a party obtains by fraud or other improper means. The Supreme Court of Virginia has described the concept as follows:

Constructive trusts arise, *independently of the intention* of the parties, *by construction of law;* being *fastened upon the conscience* of him who has the legal estate, in order to prevent what otherwise *would be a fraud.* They occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit.[2]

In Virginia, a constructive trust is not governed by the statute of frauds and may be proven in equity by parol evidence under a clear and convincing standard of proof. *Richardson v. Richardson,* 242 Va. 242, 244, 409 S.E.2d 148, 150 (1991); *Leonard v. Counts,* 221 Va. 582, 586–87, 272 S.E.2d 190, 194–95 (1980).

Debtor's counsel has sought to refute Riverside's constructive trust argument by citing cases in which courts in Virginia refused to find the existence of a trust in construction funds received by a contractor for the benefit of mechanics lien claimants. *Vansant and Gusler, Inc. v. Washington,* 429 S.E.2d 31 (Va.1993); *Kayhoe Construction Corp. v. United Virginia Bank,* 220 Va. 285, 257 S.E.2d 837 (1979); *Glen Construction Co. Inc. v. Bank of Vienna,* 410 F.Supp. 402 (E.D.Va.1976), *rev'd on other grounds,* 557 F.2d 1050 (4th Cir. 1977). Each of these cases involved the attempted application of a Virginia criminal statute, Va.Code § 43–13, to create a trust.[3]

The Supreme Court of Virginia most recently interpreted § 43–13 in the context of § 8.01–221 of the Virginia Code. *Vansant and Gusler, Inc. v. Washington,* 429 S.E.2d 31, 33–34 (Va.1993). Section 8.01–221 of the Virginia Code provides:

Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, even though a penalty or forfeiture for such violation be thereby imposed, unless such penalty

---

**2.** *Richardson v. Richardson,* 242 Va. 242, 409 S.E.2d 148, 150 (1991) (citing *Leonard v. Counts,* 221 Va. 582, 272 S.E.2d 190, 195 (1980) (quoting 1 *Minor on Real Property* § 462 at 616 (2d Ed. Ribble 1928) (emphasis in original))); *see also* 19 Michie's Juris., *Trusts and Trustees* § 48, at 121–25 (1991 & Supp.1992); William F. Fratcher, V, Scott on Trusts §§ 468 & 471–471.1, at 353–57, 369–71 (4th ed. 1989).

**3.** Va.Code § 43–13 states:

Any contractor, subcontractor or owner-developer, as defined in § 54.1–1100, or any officer, director or employee of such contractor, subcontractor or owner-developer who shall, with intent to defraud, retain or use the funds, or any part thereof, paid by the owner or his agent, the contractor or lender to such contractor or owner-developer or by the owner or his agent, the contractor or lender to a subcontractor under any contract for the construction, removal, repair or improvement of any building or structure permanently an-

nexed to the freehold, for any other purpose than to pay persons performing labor upon or furnishing material for such construction, repair, removal or improvement, shall be guilty of larceny in appropriating such funds for any other use while any amount for which the contractor, subcontractor or owner-developer may be liable or become liable under his contract for such labor or materials remains unpaid, and may be prosecuted upon complaint of any person or persons who have not been fully paid any amount due them.

The use by any such contractor, subcontractor, or owner-developer or any officer, director or employee of such contractor, subcontractor or owner-developer of any moneys paid under the contract, before paying all amounts due or to become due for labor performed or material furnished for such building or structure, for any other purpose than paying such amounts, shall be prima facie evidence of intent to defraud.

Va.Code Ann. § 43–13 (1990 & Supp.1992).

or forfeiture be expressly mentioned to be in lieu of such damages.

The court in *Vansant* concluded that § 43–13 is purely a criminal statute and that § 8.01–221 creates no new right of action for damages for violation of a criminal statute. Instead, the court reiterated a longstanding interpretation of § 8.01–221 that this section merely preserves the right to maintain an action for an injury sustained by the wrongdoing of another and to prevent the wrong-doer from setting up the defense that he had paid the penalty of his wrong-doing under a penal statute. *Vansant and Gusler, Inc. v. Washington*, 429 S.E.2d 31, 33 (Va.1993). Section 8.01–221 creates no civil right of action unless a criminal statute by its terms so provides or unless proof of the same facts that establish violation of the criminal statute also constitutes proof of an otherwise existing civil action for damages independent of the criminal statute. *Vansant and Gusler, Inc. v. Washington*, 429 S.E.2d 31, 34 (Va. 1993).

Va.Code § 43–13 provides that a contractor's use of funds for a purpose other than to pay the providers of labor or materials is prima facie evidence of larceny. Although the cases cited by debtor contain statements to the effect that a contractor's failure to pay labor and materials does not create a trust in funds received from the owner, the context of those statements must not be ignored. The issue in these cases was whether § 43–13 alone creates a trust on behalf of labor and material claimants. The cases cited by debtor do not involve circumstances similar to those present here, and there was no apparent attempt by the claimants in those cases to establish the existence of constructive trusts under common law principles. The case law thus demonstrates that the purpose of § 43–13 is punish fraud and not to provide an additional remedy or cause of action for disgruntled subcontractors. The statute simply does not affect the nonpaying contractor's indebtedness for labor and material costs. *See Builders Supply Co. of Petersburg, Inc. v. Lane (In re Lane)*, 115 B.R. 81, 83 (Bankr.E.D.Va.1990); *see also Wilson v. Gropp (In re Gropp)*, 153 B.R. 350 (Bankr.M.D.Fla.1993).

■ Therefore, in this court's view, under appropriate circumstances a court could find the existence of a constructive trust under common law in funds received by a builder under a construction contract.[4] However, it would be premature for this court to make such a ruling at this time since neither party here has yet h & d an opportunity to fully develop the constructive trust issue. Moreover, the issue would be better presented by a separate adversary proceeding brought by those parties who would be beneficiaries of a trust rather than under the instant motion for turnover.

■ It is clear that absent the establishment of a trust in the debtor's bank account the funds in the account are assets of the chapter 11 estate under the general rule of § 541(a)(1). However, because I find that Riverside has shown a reasonable probability of establishing the existence of a constructive trust in the funds I will invoke this court's equity power to impose at least a temporary restriction on debtor's use of the funds.[5] The competing claimants to the fund will thus be given an opportunity to bring an appropriate adversary proceeding to assert their claims.

The court therefore rules that Riverside and the bank must release the attachment of the debtor's bank account and turn all funds in the account over to debtor's counsel. Debtor's counsel will retain the sum of $38,907.00 in escrow pending further order of this court, and counsel may remit

---

4. This conclusion is supported by the rationale of the Virginia Supreme Court in its recent opinion interpreting Va.Code § 8.01–221. *Vansant and Gusler, Inc. v. Washington*, 429 S.E.2d at 34.

5. A common problem where a party attempts to establish a constructive trust in cash is the requirement for tracing the cash res of the trust. *See In re Cardian Mortgage Corporation*, 122 B.R. at 259–260. Tracing is not a problem in the instant case since there is no dispute that the $38,907.00 deposit which would be the trust res remains in the debtor's bank account.

the excess balance in the bank account to the debtor. Riverside and any other interested party will have 30 days from April 30, 1993, to file in this court an adversary proceeding asserting title to the restricted funds. In that event debtor's counsel will continue to retain the funds in escrow pending disposition of such a proceeding. If no adversary proceeding is filed within the 30 day period, then upon motion of debtor's counsel the court will order the release the balance of the funds to debtor.

A separate order will be entered.